# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DECADE, S.A.C., LLC, *et al.*,[1]<br><br>      Debtors. | Chapter 7<br><br>Case No. 18-11668 (CSS)<br><br>(Jointly Administered) |
| DAVID W. CARICKHOFF, solely in his capacity as chapter 7 trustee for the estates of DECADE, S.A.C., *et al.*,<br>                               Plaintiff,<br>      v.<br><br>AARON GOODWIN, REGINA GOODWIN AND ERIC GOODWIN,<br><br>                              Defendants. | **Adv Proc. No. 18-_____(CSS)** |

**COMPLAINT FOR DECLARATORY JUDGMENT
DETERMINING PROPERTY OF THE DEBTORS' ESTATES**

      David W. Carickhoff, solely in his capacity as the chapter 7 trustee (the "Trustee") of the Debtors, by and through his undersigned special counsel, files this complaint against defendants Aaron Goodwin, Regina Goodwin and Eric Goodwin (collectively, the "Goodwins," or "Defendants") for a declaratory judgment that certain property in which Defendants claim an interest is property of the Debtors' estates. In support of this Complaint, the Trustee hereby alleges as follows:

---

[1]     The Debtors and the last four digits of each Debtors' respective federal Employer Identification Number are: Decade, S.A.C., LLC (8395); Gotham S&E Holdings, LLC (5927); Decade S.A.C. Contracts, LLC (7243); Decade S.A.C. II, LLC (5679); and Decade S.A.C. Executives, LLC (9865).

{01409074;v1 }
37070027v2

## INTRODUCTION

1.  In February 2016, Debtor Decade S.A.C. Contracts, LLC ("Decade Contracts") acquired 100% of the issued and outstanding shares of Goodwin Associates Management Enterprises, Inc. ("GAME") from Aaron Goodwin, and 100% of the issued and outstanding shares of Goodwin Sports Management, Inc. ("GSM") from Eric Goodwin. Since that time, the Goodwins have taken the position that the sale of GAME and GSM to Decade Contracts was not consummated and/or is not valid. As a result, the Goodwins have refused to provide the Debtors with books and records of GAME and GSM and have converted to their personal use and for their benefit of their separate company, A. Goodwin Sports Management, Inc. ("AGSM"), certain assets of GAME and GSM. This wrongful conduct is the cause of the Debtors' bankruptcy filings.

2.  The Trustee brings this complaint seeking a declaratory judgment that: the sale of GAME and GSM to Decade Contracts was valid and properly consummated pursuant to the valid and enforceable SPA; Decade Contracts is the proper owner of 100% of the issued and outstanding shares of GAME and GSM. To the extent that the Court determines that the Goodwins hold valid shares in GAME and/or GSM, the Trustee seeks a judgment imposing a constructive trust over those shares for the benefit of Decade Contracts and directing the Goodwins to turn those shares over to the Trustee.

## JURISDICTION AND VENUE

3.  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4.  This is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court may enter a final order or judgment in this matter.

5. Pursuant to Federal Rule of Bankruptcy Procedure 7008, the Trustee consents to the entry of final orders or judgment in this matter by this Court.

## THE PARTIES

6. On July 16, 2018, Debtors Decade S.A.C., LLC ("Decade SAC") and Gotham S&E Holdings, LLC ("Gotham") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in this Court. On October 16, 2018, Debtors Decade Contracts, Decade S.A.C. II, LLC ("SAC II") and Decade Executives, LLC ("Decade Executives") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in this Court.

7. The chapter 7 cases of Decade SAC, Gotham, Decade Contracts, SAC II and Decade Executives (collectively, the "Debtors") are being jointly administered for procedural purposes only.

8. Pursuant to Section 701(a) of the Bankruptcy Code, the Trustee has been appointed as chapter 7 trustee of each of the Debtors.

9. Aaron Goodwin is a citizen and resident of the state of California. Aaron Goodwin is a player agent registered with the National Basketball Players Association (the "NBPA") to represent players who are members of that union and play in the National Basketball Association (the "NBA").

10. Regina Goodwin is a citizen and resident of the state of California and the wife of defendant Aaron Goodwin. Regina Goodwin is named as a defendant in this action because her husband has asserted that she is an owner of GAME stock.

11. Eric Goodwin is a citizen and resident of the state of Washington and the brother of defendant Aaron Goodwin.

12. Non-party GAME is a California corporation incorporated by William A. Taylor. The company's articles of incorporation, a copy of which was filed with the California Secretary

of State on or about January 4, 2000, provides, among other things, that the company is authorized to issue up to 10,000 shares of its stock.

13. Non-party GSM is a Washington Corporation incorporated by Craig S. Gilbert. GSM was incorporated as Goodwin Management Group and a copy of its articles of incorporation was filed with the Washington Secretary of State on or about February 24, 1993. On or about March 3, 2003, GSM filed Articles of Amendment of Articles of Incorporation of Goodwin Management Group with the Washington Secretary of State changing the company's name to Goodwin Sports Management, Inc. GSM's articles of incorporation provide, among other things, that the company is authorized to issue up to 50,000 shares of its stock.

14. The Trustee is in possession of a duly executed GAME stock certificate indicating that Decade Contracts is the registered holder of 10,000 shares of GAME stock. The Trustee is also in possession of a duly executed GSM stock certificate indicating that Decade Contracts is the registered holder of 50,000 shares of GSM stock.

15. Prior to the sale to Decade Contracts, GAME and GSM, through Aaron and Eric Goodwin represented basketball players in negotiating employment contracts with the teams for which they play and marketing and endorsement contracts with various companies. In return, GAME and GSM are entitled to a commission on the payments made to their athlete clients under such negotiated contracts.

**I.    Background**

    **A.    Formation of the Debtors and Transaction Background**

16. The Debtors, other than Gotham, were formed in January 2016 as part of a strategy pursued by their former management, Christopher Aden ("Aden") and Dorsey James ("James"), to acquire and grow a sports agency business. As of February 2016, Decade Contracts

acquired GAME and GSM along with certain assets from another business, SMP Sports LLC ("SMP").

17. Aden and James had been discussing an acquisition of the Goodwins' agency business for more than one year prior to the February 2016 closing of Decade Contracts' purchase of GAME and GSM. These prior efforts were unsuccessful due to a lack of financing for the transaction.

### B. The Debtors Obtain a Loan to Finance their Purchase of GAME and GSM

18. In October 2015, XXIII Capital Limited ("23 Capital") provided Gotham with a term sheet (the "Term Sheet") for a proposed $25 million loan facility concerning the Debtors proposed purchase of, among other things, GAME and GSM. Aden emailed the Term Sheet to Aaron Goodwin on or about November 4, 2015.

19. 23 Capital and the Debtors continued to negotiate the terms of the proposed financing and entered into a Loan, Guaranty and Security Agreement (the "LSA"), dated as of February 22, 2016, with 23 Capital, as lender to obtain the required financing. Pursuant to the LSA, 23 Capital agreed to make a term loan in the principal amount of $20,000,000 to the borrowers thereunder to enable them to fund the purchase of GAME and GSM, and the asset acquisitions from SMP and another business, Encore Sports and Entertainment, LLC ("Encore").

### C. The Goodwins Sign the SPA and Related Agreements

20. Decade Contracts' purchase of the GAME and GSM stock is memorialized in a Share Purchase Agreement (the "SPA") among Aaron Goodwin and Eric Goodwin as sellers, Decade Contracts as purchaser, and Decade SAC.

21. The Goodwins had previously been represented by their attorneys at Perkins Coie but did not retain counsel in connection with the SPA as they owed Perkins about $35,000 for their previous work and did not want to incur any additional legal fees.

22.     On or about February 10, 2016, Aden told Aaron Goodwin that the Loan transaction with 23 Capital and Decade Contracts' acquisition of GAME and GSM were ready to close and that the Goodwins needed to execute the SPA and certain other documents for such closing.

23.     Thereafter, neither Aaron Goodwin nor Eric Goodwin requested a copy of the SPA, or any other document, but rather Aaron Goodwin simply asked Aden, by text message, to confirm the terms of the sale. Aden responded by emailing Aaron Goodwin another copy of the Term Sheet.

24.     The Goodwins then executed the SPA signature pages and other documents necessary for the closing, including their employment agreements, and sent them to the Debtors' counsel.

25.     Pursuant to the SPA, Decade Contracts agreed to pay the Goodwins $35,000,000 in return for the GAME and GSM shares. The purchase price included a $9,500,000 initial payment and a promissory note (the "Note") given by Decade SAC to the Goodwins for the balance. The Note specifically provides that the payments owed to the Goodwins thereunder are subordinated to the payments the Debtors owed to 23 Capital under the LSA.

26.     At the Goodwins' request, the $9,500,000 initial payment was not made in a lump sum directly to them but instead was used to satisfy certain of their third-party creditors, including substantial back taxes the Goodwins owed to the United States government, with the balance being paid to them. The Debtors' paid the Goodwins' taxes directly to the United States Treasury once the Goodwins told them of the settlements they had reached with the Internal Revenue Service.

27. The Debtors distributed the $9,500,000 initial payment to the Goodwins as follows:

- February 23, 2016 – payment of $251,815.41 made to City National Bank to satisfy a lien the bank held against GAME;

- February 23, 2016 – payment of $4,372,548.49 to Aaron and Regina Goodwin;

- February 23, 2016 – payment of $2,490,042.10 to Eric Goodwin;

- April 14, 2016 – payment of $785,632.13 to the United States Treasury to satisfy tax obligations owed by Eric Goodwin;

- April 14, 2016 – payment of $222,170.87 to Eric Goodwin; and

- August 24, 2016 – payment of $1,377,791 to the United States Treasury to satisfy tax obligations owed by Aaron Goodwin.

## II. The Goodwins' Breach of their Contractual Obligations Leads to the Debtors' Bankruptcy Filings

28. Upon information and belief, prior to the closing of the GAME and GSM stock sale to Decade Contracts certain of the athlete clients of GAME and GSM made commission payments to Aaron Goodwin, personally, rather than to either of GAME or GSM. As a result, in connection with the sale of GAME and GSM to Decade Contracts, Aaron and Eric Goodwin assigned, released and quitclaimed to the Debtors any and all interest each of them had in any contract with the athletes and any payment owed under such contract. The Goodwins also contractually obligated themselves to ensure that all commission payments – both certain payments that were then due but had not yet been paid and all future payments – from the athletes were to be paid as directed by the Debtors.

29. The Goodwins breached these obligations by: failing to direct the athletes to deposit commission payments into the accounts designated by the Debtors; retaining such

payments for themselves and/or directing that such payments be made to a separate business they own; and remitting to the Debtors only a portion of the funds received.

30. The Goodwins' wrongful conduct deprived the Debtors of the revenue they needed to survive. Because the Goodwins converted the Debtors' assets for their own benefit, the Debtors were unable to repay the loan from 23 Capital or pay their employees. The Debtors paid more than $450,000 in salary and benefits to GAME and GSM employees – including the Goodwins – before they were compelled to cease operations.

31. On December 7, 2016, the Debtors received a notice from 23 Capital indicating that the loan was in default. On March 21, 2017, the Debtors received a notice from 23 Capital accelerating the loan and declaring all amounts due thereunder to be immediately due and payable.

32. On September 12, 2017, 23 Capital commenced a litigation (the "New York Action") in the United States District Court for the Southern District of New York (the "New York Court") against the Debtors and others, including Aaron and Eric Goodwin. On April 25, 2018, the New York Court entered an order that it considered the Debtors to be in default. On May 16, 2018, a clerk's certificate of default with respect to the Debtors was entered on the docket of the New York Action.

**III.    The Ownership Dispute**

33. In the NY Action, the Goodwins asserted cross-claims against the Debtors, their non-debtor affiliates and Aden and James alleging that the SPA was *void ab initio* due to fraud in its execution. The Goodwins alleged that Aden misrepresented to Aaron Goodwin the terms of the SPA and that they reasonably relied on those alleged misrepresentations in executing the SPA without reading it.

34. In the Debtors' bankruptcy case, the Goodwins have made a different argument. Here, they have asserted that the stock sale to Decade Contracts was not consummated because share certificates in GAME and GSM were not transferred to Decade Contracts and remain in the Goodwins' possession. The Goodwins have also asserted that Regina Goodwin is an owner of GAME shares.

35. In support of their contentions made in the Debtors' bankruptcy case, the Goodwins submitted to the Court a blank and unexecuted GAME share certificate and a share certificate of Goodwin Management Group purporting to indicate that Eric Goodwin is the holder of 1,000 of the company's 50,000 authorized shares.

## **COUNT ONE**
(Declaratory Judgment – Property of the Estate Pursuant to 11 U.S.C. §§105 and 541)

36. The Trustee repeats and realleges each and every allegation above as if fully set forth herein.

37. There is a genuine and bona fide dispute and an actual controversy and disagreement between the Trustee, on behalf of the Debtors, and the Goodwins regarding the consummation and validity of the sale of GAME and GSM to Decade Contracts.

38. The Trustee contends that the sale of GAME and GSM shares was validly consummated pursuant to the SPA, a valid and enforceable contract, such that Decade Contracts is the rightful owner and holder of 100% of the issued and outstanding shares of each of those companies.

39. By contrast, the Goodwins assert, alternatively, either the SPA is void due to fraud such that the Goodwins should be deemed to be the owners of the GAME and GSM shares, or the sale reflected in the SPA was not consummated such that the Goodwins are currently the owners of the GAME and GSM shares.

40. The Trustee hereby requests that the Court enter a judgment:

(a) Declaring that the SPA is a valid and enforceable contract according to its terms;

(b) declaring that Decade Contracts is the owner of 100% of the issued and outstanding shares of GAME and GSM;

(c) declaring that Decade Contracts' ownership of the GAME and GSM shares is free of any lien, claim or encumbrance on the part of the Goodwins, or any of them; and

(d) to the extent that that the Court determines that Goodwins hold valid shares in GAME and/or GSM, declaring that they hold those shares in trust for Decade Contracts.

**COUNT TWO**
(Imposition of Constructive Trust Over any valid GAME and/or GSM Shares held by any of the Goodwins and, pursuant to 11 U.S.C. § 542(a), Turnover of such shares to the Trustee)

41. The Trustee repeats and realleges each and every allegation above as if fully set forth herein.

42. Pursuant to the SPA, Decade Contracts acquired all of Aaron and Regina Goodwin's ownership interests in GAME and all of Eric Goodwin's ownership interests in GSM.

43. To the extent they held valid, properly authorized and issued share certificates for GAME and GSM, as a result of the stock sale to Decade Contracts the Goodwins were required to either transfer such certificates to Decade Contracts or cause them to be canceled.

44. To the extent they currently hold in their name valid, property authorized and issued share certificates for GAME and/or GSM, the Goodwins would be unjustly enriched if they were permitted to retain such share certificates.

45. A constructive trust should be imposed over any valid, properly authorized and issued share certificates for GAME and/or GSM currently held by any of the Goodwins as such shares are owned by Decade Contracts.

46. Pursuant to 11 U.S.C. 542(a), the Goodwins should be compelled to turn over to the Trustee any valid, properly authorized and issued share certificates for GAME and/or GSM that they currently hold.

WHEREFORE, Plaintiff, David W. Carickhoff, solely in his capacity as chapter 7 trustee of the Debtors, respectfully requests that the Court enter judgment:

(a) declaring that Decade Contracts is the owner of 100% of the issued and outstanding shares of GAME and GSM;

(b) declaring that Decade Contracts' ownership of the GAME and GSM shares is free of any lien, claim or encumbrance on the part of the Goodwins, or any of them;

(c) to the extent the Court determines that Goodwins hold valid shares in GAME and/or GSM, declaring that they hold those shares in trust for Decade Contracts;

(d) to the extent the Court determines that Goodwins hold valid shares in GAME and/or GSM, imposing a constructive trust over those shares for the benefit of Decade Contracts;

(e) to the extent the Court determines that Goodwins hold valid shares in GAME and/or GSM, pursuant to 11 U.S.C. §542(a), directing them to turn over such shares to the Trustee;

(f) awarding the Trustee his reasonable attorneys' fees and costs pursuant to Bankruptcy Rule 7054; and

(g) granting the Trustee such other and further relief as the Court deems just and proper.

Dated: January 23, 2019         **ASHBY & GEDDES, P.A.**
*/s/ Karen B. Skomorucha Owens*
William P. Bowden (#2553)
Karen B. Skomorucha Owens (#4759)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
Tel: 302.654.1888
Fax: 302.654.2067

-and-

- 12 -

**TROUTMAN SANDERS LLP**

Patrick E. Fitzmaurice
875 Third Avenue
New York, New York 10022
Tel: 212.704.6000
Fax: 212.704.6288

Andrew B. Buxbaum, Esq.
Troutman Sanders Building
1001 Haxall Point, 15th Floor
Richmond, Virginia 23219
Tel: 804.697.1200
Fax: 804.697.1339

*Special Counsel to David W. Carickhoff as Chapter 7 Trustee*