## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| DECADE. S.A.C., LLC, et. al., | ) | |
| | ) | Case No. 18-11668 (CSS) |
| Debtors. | ) | (Jointly Administered) |
| ——————————————— | ) | |
| DAVID W. CARICKHOFF., solely in his | ) | |
| capacity as chapter 7 trustee for the estates of | ) | |
| DECADE, S.A.C., LLC., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Proc. No.: 19-50095 (CSS) |
| | ) | |
| AARON GOODWIN, REGINA GOODWIN | ) | |
| AND ERIC GOODWN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION[1]

| | |
|---|---|
| **ASHBY & GEDDES, P.A.** | **THE ROSNER LAW GROUP LLC** |
| William P. Bowden | Frederick B. Rosner |
| Ricardo Palacio | Jason A. Gibson |
| 500 Delaware Avenue, 8th Floor | 824 N. Market Street, Suite 810 |
| Wilmington, DE  19899-1888 | Wilmington, DE  19801 |
| -and- | -and- |
| **TROUTMAN SANDERS LLP** | **PERKINS COIE LLP** |
| Patrick E. Fitzmaurice | Keith Miller |
| 875 Third Avenue | Gary Eisenberg |
| New York, NY  10022 | Adam Mandelsberg |
| | 1155 Avenue of the Americas, 22nd Floor |
| | New York, NY  10036 |
| Special Counsel to David W. Carickhoff | |
| as Chapter 7 Trustee | Counsel for Defendants |

Dated:

Sontchi, CJ._____

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION[2]

Before the Court is Trustee's *Motion for Summary Judgment* on count one of his Complaint.[3]  In count one, among other things, the Trustee seeks declaratory judgment regarding the validity of the Share Purchase Agreement (the "SPA") between the Goodwins, Decade Contracts, GAME, GSM, and their associated entities.  In response to the Complaint, the Goodwins asserted four counterclaims based in fraud: (i) that the SPA is a product of fraud in the execution, (ii) fraudulent misrepresentation, (iii) fraudulent inducement, and (iv) a declaration of unenforceability.[4]  In the *Motion for Summary Judgment*, the Trustee seeks judgment is his favor on each of the Goodwins' four counterclaims.  In addition, the Parties disagree about whether the SPA's New York choice of law provision or California law governs their dispute.

For the reasons stated below, the Court finds that the Trustee is entitled to summary judgment on three of the Goodwins' counterclaims; specifically, for fraud in the execution, fraudulent misrepresentation, and fraudulent inducement as the Defendants cannot establish the requisite elements of these claims.  Additionally, because there are unresolved questions of fact, the Court will grant, in part, and deny, in part, the Trustee's motion for summary judgment on the Goodwins' fourth counterclaim for a

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to them *infra*.

[3] Del. Bankr. Adv. Pro. No. 19-50095, D.I. 1.  David Carickhoff serves as the Chapter 7 Trustee of the Debtors (the "Trustee") and the Plaintiff in this adversary proceeding.  All references to the Adversary Proceeding Docket will be cited hereinafter as "Adv. D.I." and will refer to this Adversary Proceeding unless otherwise stated.

[4] Adv. D.I. 7.  Fraud in the execution, fraudulent inducement, and fraudulent misrepresentation are the first, third, and second counterclaims of the Defendants' Answer.

declaration of unenforceability.  Finally, the Court will deny the Trustee's motion for summary judgment on count one of Trustee's Complaint.  Given the similarity of New York and California law with respect to the issues presented, the Court need not address the choice of law question.

## JURISDICTION & VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A).  Venue is proper before the United State Bankruptcy Court for the District of Delaware under 28 U.S.C. §§ 1408 and 1409.  The Court has the judicial authority to enter a final order.

## BACKGROUND

### A.  Procedural History

On July 16, 2018, and October 16, 2018 Decade, S.A.C., LLC and its affiliated entities filed voluntary petitions with the United States Bankruptcy Court for the District of Delaware.[5]  These chapter 7 cases are in progress.  On January 23, 2019, the Trustee, on behalf of the Debtors, filed the *Complaint for Declaratory Judgment Determining Property of the Debtors' Estate* (the "Complaint") against Aaron, Regina, and Eric Goodwin (the "Goodwins" or the "Defendants") in connection with a dispute (the "SPA Dispute" or

---

[5] Del. Bankr. 18-11668, D.I. 1.  The Debtors in these Chapter 7 cases are as follows: Decade, S.A.C., LLC, Gotham S&E Holdings, LLC, Decade, S.A.C. Contracts, LLC., Decade, S.A.C. II, LLC, and Decade, S.A.C. Executives, LLC (collectively the "Debtors" or "Decade").

the "Dispute") involving the enforceability of the SPA.[6]   On February 25, 2019, the

Goodwins filed an *Answer to the Complaint*, which included four counterclaims against

the Debtor.[7]  On March 18, 2019, the Trustee filed the *Answer to Counterclaim*.[8]  On June 27,

2019, this Court issued an *Order Assigning Adversary Proceeding to Mediation*.[9]  Mediation

occurred but was not successful.

On August 23, 2019, the Trustee filed the *Trustee's Motion for Summary Judgment*,

seeking summary judgment on count one of his Complaint and seeking dismissal of each

of the Goodwins' four counterclaims.[10]  On September 23, 2019, the Goodwins filed *The*

*Goodwins' Memorandum of Law in Opposition to the Trustee's Motion for Summary Judgment*.[11]

In response to the Goodwin's memorandum, on September 30, 2019, the Trustee filed *The*

*Trustee's Memorandum of Law in Support of His Motion for Summary Judgment*.[12]   On

October 1, 2019, the Trustee filed *The Trustee's Request for Oral Argument* on the *Trustee's*

---

[6] Adv. D.I. 88 at A-516.  The Share Purchase Agreement involves Decade S.A.C. Contracts, LLC ("Decade Contracts"), Goodwin Associates Management Enterprises, Inc. ("GAME"), Goodwin Sports Management, Inc. ("GSM"), and their associated entities and parties (Decade, GAME, GSM, and together with their associated entities and parties, the "Parties").

[7] Adv. D.I. 7.

[8] Adv. D.I. 21.

[9] Adv. D.I. 62.

[10] Adv. D.I. 86.  The four counterclaims for declaratory judgment include: fraud in the execution, fraudulent inducement, fraudulent misrepresentation, and unenforceability.  The Motion for Summary Judgment was filed together with *The Trustee's Memorandum of Law in Support of His Motion for Summary Judgment* (D.I. 87) and the *Appendix to Memorandum of Law in Support of Motion for Summary Judgment* (D.I. 88), collectively (the "Summary Judgment Motion").

[11] Adv. D.I. 101. This memorandum was filed together with the Appendix to *The Goodwins' Memorandum of Law in Opposition to the Trustee's Motion for Summary Judgment* (D.I. 102).

[12] Adv. D.I. 109 (the "Trustee's Reply"). This memorandum was filed together with *The Trustee's Reply Appendix in Support of His Motion for Summary Judgment* (D.I. 110).

*Motion for Summary Judgment*.[13]   The Court heard oral argument on January 6, 2020.  This matter is ripe for determination.

### B.  Factual Background

Aaron and Eric Goodwin are bothers, sports agents, and founders of GAME and GSM, the target companies of the disputed transaction.  Together, they own 100 percent of the equity of each entity.

Christopher Aden and Dorsey James are sports agents and co-founders of Stealth SME and the Decade entities.[14]  In 2014, Stealth attempted to acquire GAME and GSM on the following terms:

- The Goodwins would receive $35 million over a multi-year period in salary and expenses
- If Stealth failed to both make any payment in accordance with the payment schedule and cure a breach within 7 days, the Goodwins would have the right to terminate the contract and reclaim ownership in GAME and GSM
- A "no third-party beneficiaries" provision[15]

The transaction failed because Stealth was unable to obtain financing to complete the acquisition.  As a result, no documents were signed and the proposed transaction was not consummated.

After Stealth's failed attempt to acquire GAME and GSM, Dorsey and Aden reengaged the Goodwins and sought financing to acquire these companies using   a

---

[13] Adv. D.I. 111.

[14] Adv. D.I. 1.  Dorsey James and Christopher Aden co-founded Stealth in 2014 as a sports agency business, which failed in 2015.  With the exception of Gotham S&E Holdings, LLC, they formed the Debtors in January 2016 with the goal of growing a sports agency business through acquisition.

[15] Adv. D.I. 101 at 5.

newly-formed entity, Decade S.A.C., LLC.[16]   On November 4 and November 5, 2015, Decade sent Goodwin a letter of intent which outlined the proposed transaction and a 23 Capital Term Sheet which outlined the transaction's proposed financing on the following terms:[17]

- Decade would acquire all of the stock of GAME and GSM in exchange for an approximately $35 million purchase price allocated to the Goodwins over a multi-year period
- $9.5 million of the purchase price would be paid to the Goodwins at closing
- 23 Capital would provide approximately $20 million to finance the transaction

On February 11, 2016, Aden only sent the Goodwins the  SPA's signature pages without sending the corresponding text of the agreement.[18]   On this same day, the Goodwins found assignment and fee tail provisions in their Employment Agreements, which they revised and returned to the Goodwins.[19]  On February 12, 2016, Aden claimed that he "missed one of Rebecca['s] (Gordon Rees) signing blocks," and asked the Goodwins to re-execute the signature pages.[20]  When Aaron Goodwin asked Aden if there were any changes to the SPA over the weekend Aden responded, "no changes."[21]  The Goodwins signed and returned the SPA signature pages on or about February 12, 2016.[22]

---

[16] Adv. D.I. 87 at 7.

[17] Adv. D.I. 87 at 8.

[18] Adv. D.I. 7 at 19.

[19] Adv. D.I. 88 at A-223-225.

[20] Adv. D.I. 88 at A-228.  Gordon Rees represented Decade in the disputed transaction.

[21] Adv. D.I. 88 at A-228.

[22] Adv. D.I. 7 at 19.

On February 22, 2016, 23 Capital agreed to provide a $20 million term loan to finance the SPA transaction.  Also, on this date, the transaction between Decade and the Goodwins closed.  The final SPA contained the following terms:

- $35 million purchase price for 100 percent of outstanding shares of GAME and GSM along with certain assets of SMP Sports and Encore Sports
- $9.5 million initial payment (of the $35 million) to the Goodwins at the close of the transaction
- A promissory note for the balance of the purchase price.  The promissory note subordinated Decade's payments to the Goodwins to those Decade owed to 23 Capital under the LSA
- The Goodwins assigned any interest they had in and payment owed under player contracts
- Commission payments would be paid in accordance with the directives of 23 Capital

The following day through August 2016, the Goodwins received $9.5 million pursuant to the SPA.  To the Goodwins' alleged surprise, they did not receive their initial payment from Decade but rather from 23 Capital—an entity it did not believe to be a lender in the transaction.  While, in accordance with the SPA, the Goodwins paid approximately $1.6 million to Decade, they did not remit all the required payment.[23] Decade began experiencing liquidity issues and was unable to service the 23 Capital loan or pay their employees.  In November 2016, Decade ceased fulfilling their obligation under the SPA to pay GAME and GSM employee salaries.  The Goodwins continued to make payments to their own employees in place of Decade.  In December 2016, the Goodwins requested a copy of the SPA from Aden and realized that it differed from the

---

[23] Adv. D.I. 7 at 7-8.

Stealth contract.  On December 7, 2016, 23 Capital notified Decade that the loan was in default, and on March 21, 2017, 23 Capital notified Decade that it was "accelerating the loan and declaring all amounts due thereunder to be immediately due and payable."[24]

The Goodwins argue that the SPA is invalid and unenforceable.  They assert the following defenses as evidence of genuine issues of material fact precluding summary judgment for the trustee: fraudulent execution, fraudulent inducement, fraudulent misrepresentation, and unenforceability.

As evidence of fraud, the Goodwins allege Decade made the following misrepresentations:

- Decade concealed its relationship with 23 Capital as lender in connection with the transaction.
- Decade concealed the substantive changes that 23 Capital made to the SPA which included changes that it previously rejected in the failed Stealth transaction.  These changes included:  the inclusion of third-party beneficiary rights for 23 Capital in GAME/GSM, 23 Capital's security interests in GAME/GSM receivables, and the omission of the Goodwins' rescission rights in the event of Decade's default (*i.e.* walkaway rights).
- Aden, in communications with the Goodwins, insisted that the terms of the SPA were the same as those of the Stealth contract.

The Goodwins assert that they relied on these misrepresentations in signing the contract. They also allege that Decade affixed the Goodwin's signature to a document to which the Goodwins never assented.

Alternatively, in the absence of fraud, the Goodwins argue that the SPA is "unenforceable because there was never any meeting of the minds" between Decade and

---

[24] Adv. D.I. 1 at 8.

the Goodwins.[25]  They also argue that the SPA is unenforceable because certain closing

transactions did not occur and Decade did not perform their obligations under the SPA.

The Trustee maintains that the SPA is valid and enforceable according to its terms

and that the Debtors consequently own 100 percent of both GAME and GSM.[26]  Pursuant

to the Summary Judgment Motion, the Trustee seeks an order granting summary

judgment on count one of his Complaint.  The Trustee also seeks the dismissal of each of

the Goodwins' four counterclaims.  The Trustee argues that the Goodwins fraud-based

defenses fail because they cannot establish the required elements of each cause of action.

Specifically, the Trustee contends that the Goodwins cannot establish the necessary

element of reasonable reliance because there is no evidence that the Goodwins—

sophisticated parties who have an obligation to read agreements they sign—asked to

"review the agreement before signing it or in the ten-day period between signing and

closing."[27]

The Trustee also contends that the Goodwins cannot establish the necessary

element of misrepresentation.  He denies that Aden concealed 23 Capital's proposed

revisions to the SPA because "Aden told Aaron Goodwin that 23 Capital's lawyers

control all the documents, and Decade's lawyers, Gordon & Rees, forwarded email

---

[25] Adv. D.I. 7 at 29.  Aside from this adversary proceeding, on September 12, 2017, in the United States District Court for the Southern District of New York, 23 Capital, a UK-based lender, sued the Goodwins, Aden, and James as guarantors (the "23 Capital Litigation") on a defaulted $25 million loan issued to finance the SPA (the "Loan , Guaranty and Security Agreement" or the "LSA").  On September 13, 2018, the United States District Court for the Southern District of New York ordered Aden and James to repay approximately $25 million in defaulted loan obligations to 23 Capital.

[26] Adv. D.I. 1 at 9-10.

[27] Adv. D.I. 109 at 5; *id*. at 8.

exchanges between themselves and 23 Capital's lawyers to the Goodwins."[28]  The Trustee presents the following facts to counter the allegation that Decade concealed a lender's involvement in the transaction: (i) text messages between Aaron Goodwin and Aden and between Aaron  Goodwin and C. Anthony Mulrain (Debtors' former counsel);[29] and (ii) Aaron Goodwin's receipt on at least three occasions of Decade's letter of intent and the 23 Capital/Decade Term Sheet, which defined 23 Capital as a lender.[30]

The Trustee also denies that Aden misrepresented that the terms of the SPA and the Stealth agreement were the same, citing the absence in the record of any evidence that he ever made any representations of this kind.[31]  Second, when Aaron Goodwin asked Aden if the terms were the same, Aden replied that he had "[s]ent the revisions."[32]  The Trustee rejects the notion that this exchange amounts to misrepresentation.

The Trustee also rejects the argument that the SPA is unenforceable due to a lack of meeting of the minds both because the Goodwins failed to read the contract and because they partially performed under the contract.[33]

---

[28] Adv. D.I. 109 at 9.

[29] Adv. D.I. 109 at 8.

[30] *Id.*

[31] Adv. D.I. 109 at 6.

[32] *Id.*

[33] Adv. D.I. 87 at 23-24.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is a mechanism used to ascertain the existence of a genuine factual dispute between the parties that would necessitate a trial.  FED. R. Civ. P. 56, made applicable by FED. R. BANKR. P. 7056 is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[34]

When seeking summary judgment, the movant bears the initial burden of "establishing the absence of a genuine issue of material fact."[35]  A genuine issue is not simply based on opposing opinions or unsupported assertions but rather on conflicting factual evidence over which "reasonable minds could disagree on the result."[36] Furthermore, a fact is material if it could "alter the outcome of a case."[37]  In other words, the movant's goal is to establish "an absence of evidence to support the nonmoving party's case."[38]

If the movant meets this initial burden, the burden shifts to the nonmoving party to defeat summary judgment by producing "evidence in the record creating a genuine

---

[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[35] *J. Aron & Co. v. SemCrude, L.P.* (*In re SemCrude, L.P.*), 504 B.R. 39, 51 (Bankr. D. Del. 2013) (*citing Celotex*, 477 U.S. at 322).

[36] *Liquidation Trustee v. Huffman* (*In re U.S. Wireless Corp.*), 386 B.R. 556, 560 (Bankr. D. Del. 2008) (citations omitted).

[37] *Id.*

[38] *Id.* (*quoting Celotex*, 477 U.S. at 325).

issue of material fact."[39]  To demonstrate a genuine issue of material fact, the nonmoving

party "must do more than simply show that there is some metaphysical doubt as to the

material facts."[40]  The nonmoving party must demonstrate "sufficient evidence [not mere

allegations] upon which a reasonable trier of fact could return a verdict in favor of a

nonmoving party."[41]  This "evidence cannot be conjectural or problematic; it must have

substance in the sense that it limns differing versions of the truth which a factfinder must

resolve at an ensuing trial."[42]

When considering a motion for summary judgment, "the court does not weigh the

evidence and determine the truth of the matter," rather, it determines whether there is a

genuine issue for trial."[43]  The Court must "view the facts in the light most favorable to

the nonmoving party and draw all inferences in that party's favor."[44]  "If the opposition

evidence is merely colorable or not significantly probative, summary judgment may be

granted."[45]  However, where the record could lead reasonable minds to draw "conflicting

inferences, summary judgment is improper, and the action must proceed to trial."[46]

---

[39] *In re W.R. Grace & Co.*, 403 B.R. 317, 319 (Bankr. D. Del. 2009).

[40] *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[41] *Giuliano v. World Fuel Services, Inc.* (*In re Evergreen International Aviation*), 2018 WL 4042662, at *2 (Bankr. D. Del. Aug. 22, 2018) (citations omitted).

[42] *Liquidation Trustee*, 386 B.R. at 560 (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

[43] *Argus Mgmt. Group v. GAB Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 214 (Bankr. D. Del. 2005) (*quoting Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986) (citations omitted)).

[44] *Saldana v. Kmart*, 260 F.3d 228, 231-32 (3d Cir. 2001).

[45] *Whitlock v. Pepsi Americas*, No. C 08-24742 SI, 2009 WL 3415783, at *7 (N.D. Cal Oct. 21, 2009) (citations omitted).

[46] *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (*quoting Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000).

Summary judgment is proper only where one reasonable inference or interpretation of the facts can be drawn in favor of the moving party.[47]

While the party moving for summary judgment has the burden of ". . . establish[ing] an absence of evidence to support the nonmoving party's case," the party asserting the contract defense bears the burden of proving the elements of its defense in order to defeat summary judgment.  To meet this burden, the party asserting the contract defense cannot simply allege fraud, it must prove each element with specificity.

**B. New York and California Law Are in Accord on the Issues of Fraud Presented in This Case and Can Be Used Interchangeably.**

The Parties disagree about whether the SPA New York choice of law provision or California law should govern the Dispute.   Section 12.5, the Governing Law provision of the SPA provides in relevant part:

> This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of New York (without giving effect to principles of conflicts of law that would result in the application of the laws of a jurisdiction other than the State of New York).[48]

The Goodwins argue that California law governs the Dispute because the narrowness of the SPA's construction precludes it and because relevant conflict of laws analysis demands it.   First, they argue that, as written, Section 12.5 applies to the construction of contractual terms and not to the claims or defenses relating to the formation of the SPA.[49]  Second, using Delaware's most significant relationship test, they

---

[47] *Id.*

[48] Adv. D.I. 88 at A-548.

[49] Adv. 101 at 19.

highlight that the balance of factors favors the application of California state law:  (i) the executed letter of intent between the Parties contains a California choice of law provision; and (ii) the California domicile of Aaron Goodwin, GAME's California incorporation; and (iii) the possibility that the Goodwins were located in California when they executed the SPA.[50]

Decade argues SPA Section 12.5 applies to the Dispute for the following reasons: (i) New York law has been guiding the Parties since 2017;[51] (ii) the Goodwins did not dispute that New York law governed the SPA in the 23 Capital Litigation;[52] (iii) Delaware case law supports the application of a contract's choice of law provisions in the context of fraud claims; (iv) the language of Section 12.5 provides that New York law should apply "in all respects;"[53] (v) and when state laws do not conflict, Delaware courts enforce choice of law provisions.[54]

A choice of law provision is not controlling when the validity of the entire contract is in question.  If the Court were to honor a choice of law provision where it is alleged that agreement was induced by fraud, it risks lending undue legitimacy to a contract that may not reflect the intention of the Parties.  While SPA Section 12.5 would likely control in disputes involving the rights and duties of the Parties under the contract, it is not clear if the Parties contemplated that New York law would govern disputes involving

---

[50] *Id.*

[51] Adv. D.I. 109 at 1.

[52] *Id.*

[53] Adv. D.I. 109 at 2.

[54] Adv. D.I. 109 at 3.

"tortious conduct that led up to the execution of the contract or to other action arising out of their relationship."[55]

"Contractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship."[56]  It does not appear the Parties, all sophisticated business persons, contemplated that the provision would govern contract validity disputes.  As the court noted in *Coram Healthcare*:

> If these sophisticated parties had wanted a more expansive choice of law provision, they could easily have drafted one. For example, as other parties have done, [the parties] could have inserted language that [New York] law governed "all matters, including, but not limited to, matters of validity, construction, effect or performance.[57]

Here, the Parties did not take these steps. Thus, the fraud claims are not subject to the SPA's choice of law provision.

The Dispute requires a separate analysis to determine the applicable state law.  In *Klaxon Co. v. Stentor Electric Manufacturing Co.*, the Supreme Court held that a federal court sitting in diversity must apply the choice of law rules of the forum state when questions "arise in federal court but whose determination is not a matter of federal law."[58]

---

[55] *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999); *See Black Box Corp. v. Markham*, No. 03-3910, 2005 WL 546649, at *3 (3d Cir. Mar. 9, 2005) (noting that the election of the choice of law provision will control those issues involving the parties "rights and duties under the contract itself, not claims for fraudulent and/or negligent misrepresentation and omission.") (citations omitted).

[56] *Jiffy Lube, Int'l, Inc. v. Jiffy Lube of Penn,* 848 F. Supp. 569, 576 (E.D. Pa. 1994).

[57] *Coram Healthcare*, 94 F. Supp. 2d at 593 (citations omitted).

[58] *In re Kaiser Group Intern. Inc.*, Adv. No. 09-52317, 2010 WL 3271198 at *4 (D. Del. Aug. 17, 2010) (quoting *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

However, it is unclear if this holding extends to circumstances in which a court derives its jurisdiction from a federal question.  As in *In re LMI Legacy Holdings, Inc.*, given the absence of an overriding federal interest, this Court will apply *Klaxon*.[59]

The Delaware Bankruptcy Court describes the Delaware choice of law analysis as follows:

> When ascertaining what law should be applied, Delaware employs a two-pronged approach, where the court must: (1) compare laws of the competing jurisdictions to determine whether laws actually conflict on a relevant point, and then, if actual conflict exists; (2) apply the "most significant relationship" test.  "However, before a choice of law question arises, there must actually be a conflict between the potentially applicable bodies of law .... [where there is no such conflict] the court should avoid the choice of law question."  That is, where there is no conflict of laws, the court can apply the laws of the relevant states interchangeably in discussing the law applicable to the case.[60]

Because the laws of New York and Delaware do not conflict on the issues presented and the legal regimes would likely lead to the same outcome, this Court should avoid the choice of law question.

With respect to fraud claims generally, New York and California define fraud using the same elements: (i) misrepresentation of fact (false representation, concealment, or nondisclosure),[61] (ii) knowledge of its falsity, (iii) intent to induce reliance, (iv) justifiable reliance on the misrepresentation, and (v) damage as a result of the

---

[59] *In re LMI Legacy Holdings, Inc.*, No. 13-12098, 2017 WL 1508606, at *5 (Bankr. D. Del. Apr. 27, 2017).

[60] *Hardware, LLC v. Zero Int'l Inc.*, No.  2014 WL 5144610, at *7 (D. Del. Oct. 14, 2014) (citations omitted).

[61] With respect to fraud claims generally, New York courts require a misrepresentation of a material fact instead of a misrepresentation of fact.  This distinction will not make a difference in this case.

reliance.[62] Additionally, the Parties similarly define fraud in the execution, fraudulent inducement, and fraudulent misrepresentation.

In discussing the law applicable to this Dispute, this opinion will apply the laws of New York and California interchangeably.

### C. The Trustee Is Entitled to Summary Judgment on the Goodwins' First Counterclaim for Declaration of Fraud in the Execution.

The Goodwins allege that Decade has committed fraud in the execution in connection with the SPA.[63]  They allege that in order to induce them to sign the SPA: (i) Aden concealed both 23 Capital's identity as the lender in the transaction and 23 Capital's material changes to the SPA,[64] (ii) Aden was aware that these changes — involving external loans, third-party beneficiaries, and walkaway rights restrictions in the event of a breach — were contrary to the Goodwins' previously expressed positions,[65] (iii) and that Aden, when asked if there were any changes to the document, re-sent a November letter of intent without mentioning the substantive changes or that 23 Capital had suggested them.[66]

Fraud in the execution occurs when (i) a party, through misrepresentation of a changed document, is "induced to sign something entirely different than what he

---

[62] *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294, 37 Cal. Rptr. 3d 364, 367 (Cal. Ct. App. 2005); *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569, 578–79, 106 N.E.3d 1176 (N.Y. 2018).

[63] Adv. D.I. 101 at 22 (*citing Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 32 (2d Cir. 1997)).

[64] Adv. D.I. 101 at 23.

[65] *Id.*

[66] *Id.*

thought he was signing,"[67] and (ii) that party is "excusably ignorant" of the terms of the document that he signed.[68]    Where both the misrepresentation and the excusable ignorance exist, courts have found that the signatory may justifiably rely on the false representation of the content of the document.  In that instance, mutual assent is lacking and the contract is rendered void.

Excusable ignorance is most commonly found when the signatory is "illiterate, blind, or not a speaker of the language in which the document is written."[69] Nevertheless, Courts require even these parties to demonstrate that they endeavored to have the contract read to them and simply did not rely on the misrepresentation of others.[70]  Courts have also found excusable ignorance where a party is deprived of a reasonable opportunity to examine the document, is forced to sign the contract, or has a valid excuse for not having read the document that he ultimately signed.[71]

Absent these narrow exceptions, even if fraud is alleged with specificity, a party is conclusively bound by the terms of the contract.[72]  Fraud in the execution is merely an

---

[67] *Dalessio v. Kressler*, 6 A.D.3d 57, 61 (N.Y. App. Div. 2004); For example, Party A reads and agrees upon written terms with Party B. However, immediately prior to execution, Party B substitutes the agreed terms for new ones that the Party A signs.  *See Victorio v. Sammy's Fishbox Realty Co.*, LLC, No. 14 Civ. 8678, 2015 WL 2152703, at *14 (S.D.N.Y. May 6, 2015).

[68] *First Nat'l. Bank of Odessa v. Fazzari*, 10 N.Y.2d 394, 397, 223 N.Y.S.2d 483 (N.Y. 1961); *McCaddin v. SE. Marine Inc.*, 567 F. Supp. 2d 373, 379 (E.D.N.Y. 2008) (holding that excusable ignorance is a necessary element of the fraud in the execution defense).

[69] *Ackerman v. Ackerman*, 120 A.D.3d 1279, 1280, 993 N.Y.S.2d 53 (N.Y. 2014).

[70] *Nerey v. Greenpoint Mortg. Funding, Inc.*, 144 A.D.3d 646, 648, 40 N.Y.S.3d 510 (N.Y. App. Div. 2016); *id.* (*citing* (*Holcomb v. TWR Express, Inc.*, 11 A.D.3d 513, 514, 782 N.Y.S.2d 840 (N.Y. App. Div. 2004) ("An inability to understand the English language, without more, is insufficient to avoid this general rule.").

[71] *Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1080, 122 Cal. Rptr. 3d 22, 29 (Cal. Ct.  App. 2011).

[72] *Sorenson v. Bridge Capital Corp.*, 52 A.D.3d 265, 861 N.Y.S.2d 280 (N.Y. App. Div. 2008) (citations omitted).

exception to a well-settled principle that "a party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents."[73]

Courts are particularly unsympathetic towards sophisticated parties that allege fraud in the execution.[74] As the New York Court of Appeals once said:

> That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.[75]

Furthermore, courts in a number of New York cases have found that a party's obligation to read an agreement prior to signing it is not diminished if it is only presented with a signature page.[76] Ultimately, with limited exceptions, a party cannot justifiably rely on the representations of other parties when signing an agreement without first reading the contract.

The Goodwins do not present evidence that they were "induced to sign something entirely different than what [they] thought [they] were signing."[77] Their argument that

---

[73] *Dasz, Inc. v. Meritocracy Ventures, Ltd.*, 108 A.D.3d 1084, 969 N.Y.S.2d 653, 655 (N.Y. App. Div. 2013) (citations omitted); *Rosencrans*, 192 Cal. App. 4th at 1080, 122 Cal. Rptr. 3d at 29.

[74] *Desert Outdoor Advertising v. Sup.Ct. (Murphy)*, 196 Cal. App. 4th 866, 868, 127 Cal.Rptr.3d 158, 159; *see Mt. Holyoke Homes, L.L.P. v. Jeffer Mangels Butler & Mitchell, LLP*, 219 Cal.App.4th 1299, 1309-1310, 162 Cal.Rptr.3d 597, 603-605 (Cal. Ct. App. 2013); *Davidowitz v. Patridge*, No. 08 Civ. 6962, 2010 WL 5186803 at *10 (S.D.N.Y. Dec. 7, 2010).

[75] *Pimpinello v. Swift & Co.*, 253 N.Y. 159 (N.Y. 1930).

[76] *Dasz*, 108 A.D.3d at 1085, 969 N.Y.S.2d at 655 (*citing Vulcan Power Co. v. Munson*, 89 A.D.3d 494, 495, 932 N.Y.S.2d 68 (N.Y. App. Div. 2011) ("[a] signer's duty to read and understand that which it signed is not diminished merely because [the signer] was provided with only a signature page"); *see also M & T Bank v. HR Staffing Sols., Inc.*, 106 A.D.3d 1498, 1500, 964 N.Y.S.2d 847, 849 (N.Y. App. Div. 2013).

[77] *Dalessio v. Kressler*, 6 A.D.3d at 61.

Decade concealed the lender relationship is negated by the Trustee's evidence that, on three separate occasions, the Goodwins were sent the Decade/23 Capital Term Sheet, which clearly defines 23 Capital as the lender and Decade as the borrower.[78]  The record also negates the allegation that Decade concealed 23 Capital's substantive changes to the SPA.  The Goodwins react to the proposed changes as if they were blindsided by 23 Capital's third-party rights in the GAME and GSM, 23 Capital's security interest in GAME/GSM receivables, the omission of the Goodwins' walkaway and rescission rights in the event of a breach the contract, and the SPA transaction being contingent on the close of two other transactions.  Again, on at least three occasions, Aden sent Aaron Goodwin the 23 Capital/Decade Term sheet, which broadly conceptualizes the terms the Goodwins claim Decade concealed.

With respect to third-party rights, the Term Sheet's Security section provides that 23 Capital would have "charge over all the issued shares" in HoldCo and OpCo(s) as appropriate.[79] With respect to receivables, the Term Sheet provides that 23 Capital would have "security over all contracted receivables" and "the rights to collect all gross income received by the company ahead of any other connected or third party interest."[80]  With these general concepts defined in the Term Sheet, it would be unrealistic for the Goodwins to expect at the execution phase of the contract that they would have

---

[78] Adv. D.I. 88 at A-351, A-361, A-363, A-377, A-394, A408.

[79] Adv. D.I. 88 at A-378.

[80] *Id.*

walkaway and rescission rights in the event of a breach.  It is impossible for these terms

and the Goodwins' alleged expectations to co-exist.

 Although the Term Sheet does not contain any language about the SPA being

contingent on other transactions, the record is insufficiently developed to determine if

Aden concealed this contingency from the Goodwins.  Still, it is clear that the Goodwins'

allegation that Decade concealed substantive changes to the SPA is false.

The Trustee also highlights the absence of evidence supporting the second

essential element of fraud in the execution—that the signatory was "excusably ignorant"

of what he was signing.  That is, the signatory "sign[ed] [the SPA] without knowing or

having a reasonable opportunity to know of its character or essential terms."[81]

Whether a party had a reasonable opportunity to know of the character or essential

terms of a contract is "ordinarily a question of fact, except in the rare case where the

undisputed facts leave no room for a reasonable difference of opinion."[82]  Here, the Court

finds itself in the latter situation.  The Goodwins do not present any evidence that they

were denied the opportunity to read the final contract.

Viewing evidence in the light most favorable to the Goodwins, the record also does

not show that the Defendants made any attempt to fulfill their obligation to read the SPA.

Misrepresentation does not excuse a defrauded party from attempting to fulfill its

---

[81] *Hetchkop*, 116 F.3d at 33.

[82] *McColgan v. Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1233–34 (E.D. Cal. 2014) (*citing Blankenheim v. E.F. Hutton*, & Co., No. 2:13-cv-02417, 217 Cal.App.3d 1463, 1475, 266 Cal.Rptr. 593 (Cal. Ct. App. 1990)).

obligation to read a contract, even if a defrauded party is ultimately excused from a contract because it does not have a reasonable opportunity to read it.

As Decade highlighted in its memorandum, the Goodwins' defense is also hindered by the fact that they are sophisticated parties, who are held under New York and California case law to a higher standard to perform due diligence prior to signing a contract.[83] Neither jurisdiction supports the Goodwins' contention that the definition of a sophisticated party is exclusively reserved for lawyers.[84] As business people who routinely negotiate multi-million-dollar contracts on behalf of professional athletes, the Goodwins are decidedly sophisticated parties.

Nor is the Goodwins' defense bolstered by the fact that the perception of a single material drafting error would usually elicit closer monitoring of contract language in subsequent rounds of negotiation.  Here, however, on at least three occasions prior to closing, there were changes in the transaction documents the Goodwins allege to have strongly opposed: (i) on February 9, 2016, Aaron Goodwin found non-compete language in the document; (ii) on February 11, 2016 Aaron Goodwin found unfavorable fee tail language in the Employment Agreement; and (iii) on February 11, 2016 Aaron Goodwin found the same fee tail language despite having just revised this section of the Employment Agreement.  Yet, the Goodwins chose not to conduct their own review of

---

[83] Adv. D.I. 101 at 27; *contra Davidowitz*, 2010 WL at *10 (*citing Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828–29, 537 N.Y.S.2d 787, 792 (N.Y. 1988); *Daniel Gale Assocs. v. Hillcrest Estates, Ltd.*, 283 A.D.2d 386, 387–88, 724 N.Y.S.2d 201, 202–03 (N.Y. App. Div. 2001)); *Desert Outdoor*, 196 Cal. App. 4th at 868, 127 Cal.Rptr.3d at 159.

[84] Adv. D.I. 101 at 27.

the SPA before signing.    Instead, the Goodwins chose to rely on Decade's alleged

representations.    By the Goodwins' own admission, "Aden transmitted the Purported

SPA to Aaron Goodwin for the first time on December 1, 2016."[85]  If true, this fact means

the Goodwins did not read the SPA until approximately 293 days after they signed the

signature pages on or about February 12, 2016.[86]

The Goodwins argue that they read the SPA because they read the employment

agreements.    However, even if these employment agreements were part of the larger

transaction, they, nevertheless, were different contracts from the SPA.    The recital

language of the employment agreements suggest that these were separate agreements.

They provide in relevant part:

> Whereas, Decade, S.A.C. Contracts, LLC, a Delaware limited
> liability company ("Decade") has agreed to acquire certain
> assets of Goodwin Associates Management Enterprises, Inc.,
> a California corporation and Executive (collectively, "Seller")
> pursuant to a Share Purchase Agreement (the "Purchase
> Agreement") dated as of January 29, 2016, by and among
> Purchaser, Decade, Executive and Seller (the "Purchase
> Transaction"); and

> Whereas, as a condition to the consummation of the Purchase
> Transaction, the Parties desire to enter into this Agreement
> pertaining to the employment of Executive by Company after
> the Closing.[87]

The Goodwins' focus is misplaced.    What is at issue on summary judgment is not the

validity of the Employment Agreements but rather the validity of the SPA.    Even if the

---

[85] Adv. D.I. 101 at 15.

[86] Adv. D.I. 7 at 19.

[87] Adv. D.I. 101 at A-556.

SPA and the Employment Agreements are considered one contract, reading only a portion of a contract falls short of the obligation to read the entire contract prior to signing it.[88]

It is likely that the Goodwins' unexplained preference for the application of California law is that only New York cases have specifically found that "a signer's duty to read and understand that which it signed is not diminished merely because the signer was provided with only a signature page."[89]  The fact that California has not addressed this particular situation does not change the general principal that under both New York and California law, absent any evidence of an attempt to fulfill their obligation to read the agreement, the Goodwins cannot justifiably rely on the misrepresentation of others. This failure to fulfill their obligation is particularly glaring given the fact that the Goodwins are sophisticated parties that regularly negotiate multi-million-dollar contracts.   Consequently, the Goodwins are be barred from asserting the fraud in the execution defense.[90]

Summary judgment will be entered in the Trustee's favor on the Defendants' fraud in the execution counterclaim.

---

[88] *Sorenson*, 52 A.D.3d at 266, 861 N.Y.S.2d at 282 (holding that where a party re-read only those sections he was told changed prior to signing the agreement, he would be bound).

[89] *Vulcan Power*, 89 A.D.3d at 495, 932 N.Y.S.2d at 69 (citations omitted).

[90] *Id.* at 68.

### D. The Trustee Is Entitled to Summary Judgment on the Goodwins' Third Counterclaim for Declaration of Fraudulent Inducement.

The Goodwins also argue that they signed the SPA as a result of fraudulent inducement. The Goodwins correctly state the elements for a fraud in the inducement defense: (i) misrepresentation (false representation, concealment, or nondisclosure), (ii) scienter or knowledge of its falsity, (iii) intent to induce reliance, (iv) justifiable reliance, (v) and resulting damage.[91] Fraud in the inducement "occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual asset is present and a contract is formed, which, by reason of the fraud, is voidable."[92]

The Goodwins allege that Aden made the following misrepresentations with full knowledge of their falsity:[93] (i) he falsely represented to Aaron Goodwin that the terms of the Purported SPA were the same as had been negotiated in the Stealth Agreement, (ii) he concealed the existence of 23 Capital's edits to the SPA proposed in late January and February 2016, and (iii) he failed to disclose Decade's lending relationship with 23 Capital, (iv) he falsely represented to Decade's counsel and business partners that the Goodwins were "fine" with 23 Capital's revisions to the SPA even after he knew that the proposed 23 Capital revisions were unacceptable to the Goodwins. In further support of their argument, the Goodwins point out that the Trustee acknowledged that the

---

[91] *McColgan*, 4 F. Supp. 3d 1233–34 (*citing Hinesley*, 135 Cal.App.4th at 294, 37 Cal.Rptr.3d at 364 (Cal. Ct. App. 2005)); *Garamendi v. Golden Eagle Ins. Co.*, 128 Cal. App. 4th 452, 470, 27 Cal. Rptr. 3d 239, 253 (Cal. Ct. App. 2005).

[92] *Duick v. Toyota Moto Sales, USA., Inc.*, 198 Cal.App.4th 1316, 131 Cal.Rptr.3d 514 (Cal. Ct. App. 2005) (citations omitted).

[93] Adv. D.I. 101 at 25.

Goodwins acted on reasonable reliance of the material misstatements made by Aden or James.[94]

The Goodwins assert that Aden was motivated to fraudulently induce their signatures in order to obtain financing and benefit from the proposed deal synergies. As a result, the Goodwins claim that they "have suffered a range of economic and reputational damages."[95]

The Goodwins' fraudulent inducement defense fails, in part, because they cannot establish justifiable reliance, an essential element of the fraudulent inducement defense. As further detailed *supra*, the Goodwins cannot justifiably rely on Decade's representations if the Goodwins cannot demonstrate that they attempted to review the SPA prior to signing it.

The Goodwins fraudulent inducement defense also fails because the alleged misrepresentations they put forward provide no triable issues for the Court. The allegation that Decade concealed both its lending relationship with 23 Capital and their substantial edits to the SPA is unsubstantiated and contravened by the record.

So, too, is the allegation that Decade falsely represented the SPA transaction as the same as the Stealth transaction. The Goodwins reference Aden's July 22, 2019 deposition to argue that Aden falsely represented to Aaron Goodwin in phone calls that the terms of the Purported SPA were the same as had been negotiated in the Stealth Agreement.[96]

---

[94] Adv. D.I. 101 at 26.

[95] *Id.*

[96] Adv. D.I. 101 at 12.

However, the referenced sections of the deposition do not support this assertion.[97]  In Aden's deposition, he was asked if he had ever told the Goodwins of any changes to the SPA, to which Aden replied that he did not remember.[98]  Aden explains that he relied on Gordon & Rees (Decade's counsel) to communicate any changes to the SPA and that he did not know if the law firm had communicated changes to the Goodwins.[99]  Neither the Goodwins nor the record provide support for this false representation allegation.

Under New York law, the allegation that Aden misrepresented the Goodwins' acceptance of 23 Capital's proposed edits are beyond the scope of the fraudulent inducement analysis.[100]  Fraudulent inducement only involves the misrepresentation of a fact. Aden's view of the Goodwins' position on the proposed revisions is an opinion. Under California law, however, while it is generally the case that expressions of opinion cannot form the basis for fraud, where the opinion is stated with the intention of deceit, a cause of action is warranted.  Under California law, this allegation would be a question of fact inappropriate for summary judgment.  Nevertheless, the Goodwins do not demonstrate a triable issue with respect to Aden's intention to deceive.

Furthermore, the Goodwins do not meet their obligation to state their fraud claims with particularity.[101]  Specifically, the Goodwins' statements with respect to the element

---

[97] *Id.*

[98] *Id.*

[99] Adv. D.I. 102 at B-1983–B-1984.

[100] *Crossland Sav., F.S.B. v. SOI Dev. Corp.*, 166 A.D.2d 495, 560 N.Y.S.2d 782, 783 (1990).

[101] *Lazar v. Superior Court*, 12 Cal. 4th 631, 645, 909 P.2d 981, 989 (Cal. 1996); *Gleyzerman v. Law Offices of Arthur Gershfeld & Assocs.*, PLLC, 154 A.D.3d 512, 513, 62 N.Y.S.3d 112, 115 (N.Y. App. Div. 2017).

of damages fail this test.  The Goodwins do not explain their damages except that "as a result of Aden's fraudulent conduct, [they] suffered a range of economic and reputational damages."[102]  This explanation of damages is insufficient.

Additionally, the Goodwins' assertion that the Trustee acknowledges that the Goodwins acted in reasonable reliance on Decade's alleged material misstatements is, at best, taken out of context.  The Trustee states in relevant part:

> The only defense to the validity of the SPA that has been asserted is that the Goodwins' signatures to the SPA were procured by fraud.  In other words, the Goodwins acknowledge that their signatures appended to the SPA are genuine, they actually signed the relevant pages, but claim that those signatures do not reflect their agreement to the SPA because they were induced to sign by fraud.  The Trustee assumes for these purposes that the Goodwins could establish that they signed the SPA in reasonable reliance on material misstatements made to them by Aden and/or James.  But, the Goodwins, did not read the SPA before signing the signature page and returning it to Aden, nor did they demand that Aden provide them with a copy of the SPA before signing it.[103]

When read in context the Trustee is not admitting that the Goodwins signed the SPA in reasonable reliance on Decade's material misstatements.  Rather, the Trustee is stating, for the purposes of argument, that even if the Goodwins could establish that they accepted the statements made to them as true, their fraud claim would be denied because the Goodwins failed to read the SPA before signing it.

---

[102] Adv. D.I. 101 at 26.

[103] Adv. D.I. 87 at 11.

Overall, the Goodwins' fraudulent inducement claim fails as the Goodwins cannot satisfy the necessary elements of their defense. Summary judgment will be entered in favor of the Trustee on the Defendant's fraudulent inducement counterclaim.

### E. The Court Will Grant, in Part, and Deny in Part, the Trustee's Motion for Summary Judgment on the Goodwins' Second Counterclaim for Declaration of Fraudulent Misrepresentation.

Fraudulent misrepresentation and fraudulent inducement are very similar in that they are comprised of the same elements: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage.[104] They are distinguished, however, by when they occur — fraudulent inducement, unlike fraudulent misrepresentation, must "[p]recede the formation of a contract."[105] The Goodwins' fraudulent misrepresentation defense fails for the same reasons that the fraudulent inducement defense fails.

Thus, summary judgment will be entered in favor of the Trustee on the fraudulent misrepresentation counterclaim.

### F. Trustee Is Not Entitled to Summary Judgment on the Goodwins' Fourth Counterclaim for Declaration of Unenforceability.

The Goodwins argue that the SPA is "unenforceable because there was never any meeting of the minds" between Decade and the Goodwins.[106] They contend: (i) they never agreed to certain terms in the contract involving 23 Capital and third-party

---

[104] *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 172 Cal. Rptr. 3d 218 (Cal. Ct. App. 2014).

[105] 37 C.J.S. Fraud § 13 (2019).

[106] Adv. D.I. 7 at 29-30.

beneficiary rights, receivables, or commissions; (ii) closing transactions required under the contract did not occur such as Decade's delivery of promissory notes and the Goodwins' delivery of the GAME and GSM shares; (iii) the Debtors breached their obligations under the SPA to pay employee salaries and the Goodwins' expenses.

The Trustee rejects the unenforceability argument because (i) a party is bound by a contract that he did not read, and (ii) the Goodwins partially performed under the contract.

The Court rejects the idea that the SPA is unenforceable due to a lack of meeting of the minds.  As previously noted, it is a well-settled principle that "a party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a document on the ground that he or she did not read it or know its contents."[107]  As sophisticated parties, the Goodwins provided no evidence that they fulfilled their obligation to review the SPA.  They did not request a copy of the SPA until long after the transaction closed.

The Court also rejects the argument that the contract is unenforceable because the Parties failed to physically deliver promissory notes and shares.  Here, even if they were components of the contract, the Goodwins present no evidence that the contract was contingent on these items.  In the absence of a contingent condition for delivery of the shares and promissory note, substantial performance may be sufficient.  Nevertheless, substantial performance is a question of fact inappropriate for the summary judgment

---

[107] *Dasz*, 108 A.D.3d at 1084, 969 N.Y.S.2d at 655 (citations omitted); *Rosencrans*, 192 Cal. App. 4th at 1080, 122 Cal. Rptr. 3d at 29.

stage.[108]    Whether the Goodwins ratified the contract is also a question of fact

inappropriate for the summary judgment stage.[109]  A breach of contract provides the non-

breaching party with a cause of action for a breach of contract.  This cause of action is,

however, distinct from the question of contract enforceability.

The Goodwins offer no evidence to render the contract unenforceable.

Nevertheless, a factual determination will be necessary to resolve two elements of this

issue, *i.e.*, substantial performance and ratification.  Thus, the Court will grant, in part,

and deny, in part, the Trustee's motion for summary judgment on the Goodwins' fourth

counterclaim.   The sole issues reserved for trial are substantial performance and

ratification.

### G. The Trustee Is Not Entitled to Summary Judgment on Count One of the Complaint, Which Seeks a Declaration That the SPA Is Valid and Enforceable Contract According to Its Terms.

The Court will deny the Trustee's request for summary judgment on count one of

the Complaint.  While the Goodwins have not met their burden with respect to their

fraud-based counterclaims, factual questions remain with respect to count one of the

Complaint.

## CONCLUSION

A party asserting a defense against a movant seeking summary judgment for the

enforceability of a contract, must prove each of the elements of his defense with

---

[108] *In re Exide Technologies*, 607 F.3d 957, 963 (3d Cir. 2010) (noting that under New York law "the issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the inferences are certain.").

[109] *Lewis v. US*, 56 F.2d 563, 556 (3d Cir. 1932) ("Whether or not a contract is ratified is a question of fact.").

specificity.    Reasonable reliance and misrepresentation are required elements of the Goodwins' contract defenses of fraud in the execution, fraudulent inducement, and fraudulent misrepresentation.    Negotiating parties, especially sophisticated ones, are obligated to read the documents they sign.  The Goodwins have failed to present evidence that they have a valid excuse to justify their failure to read the SPA prior to signing it.  Furthermore, the Goodwins have failed to present evidence of misrepresentation.  The Court will, consequently, grant summary judgment in favor of the Trustee on the Goodwins' counterclaims for fraud in the execution, fraudulent inducement, and fraudulent misrepresentation.    Triable issues of fact require the Court to grant, in part, and deny, in part, the Trustee's summary judgment motion on the Defendants' fourth counterclaim based on unenforceability.    The sole issues reserved for trial, however, are substantial performance and ratification.

Finally, the Court will deny the Trustee's motion for summary judgment on count one of the Complaint.  While any evidence of alleged fraud will be precluded, there are genuine issues of fact that preclude entry of summary judgment.  An order will be issued.