# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DECADE, S.A.C., LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 7<br><br>Case No. 18-11668 (CSS)<br><br>(Jointly Administered) |
| David W. Carickhoff, in his Capacity as Chapter 7 Trustee for the Estates of Decade S.A.C., LLC and Gotham S&E Holding, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>Aaron Goodwin, Regina Goodwin and Eric Goodwin,<br><br>        Defendants. | Adv. Proc. No. 19-50095 (CSS) |

## THE GOODWINS' MOTION FOR STAY PENDING APPEAL OF ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email:  rosner@teamrosner.com
        gibson@teamrosner.com

Dated: February 12, 2020

**PERKINS COIE LLP**
Keith Miller (*Pro hac vice*)
Gary Eisenberg (*Pro hac vice*)
Adam Mandelsberg (*Pro hac vice*)
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036
Telephone: (212) 262-6902
Email:  KeithMiller@perkinscoie.com
        GEisenberg@perkinscoie.com
        AMandelsberg@perkinscoie.com
*Counsel for Defendants-Appellants*

---

[1] The Debtors and the last four digits of each Debtors' respective federal Employer Identification Number are: Decade, S.A.C., LLC (8395); Gotham S&E Holdings, LLC (5927); Decade S.A.C. Contracts, LLC (7243); Decade S.A.C. II, LLC (5679); and Decade S.A.C. Executives, LLC (9865) (collectively, "Decade").

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

CONCISE STATEMENT OF FACTS ...................................................................................1

ARGUMENT ..........................................................................................................................2

      A.      Standard for Stay Pending Appeal ..........................................................................3

      B.      The Goodwins Are Likely to Succeed on the Merits of Their Appeal....................4

      C.      The Goodwins Will Be Irreparably Harmed if a Stay Is Not Granted....................6

      D.      A Stay Pending Appeal Will Not Injure Other Parties............................................9

      E.      Granting A Stay Is in the Public Interest.................................................................9

      F.      Conclusion ...............................................................................................................9

CONCLUSION......................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**

*Connors v. Fawn Min. Corp.*,
    30 F.3d 483 (3d Cir. 1994) ............................................................................................. 5

*Constructors Ass'n of W. Pa. v. Kreps*,
    573 F.2d 811 (3d Cir. 1978) ........................................................................................... 4

*Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*,
    501 F.2d 917 (3d Cir. 1974) ........................................................................................... 4

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ........................................................................................................ 3

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015) ........................................................................... 3, 4, 7, 10

*Minard Run Oil Co. v. U.S. Forest Serv.*,
    670 F.3d 236 (3d Cir. 2011) ........................................................................................... 7

*Saldana v. Kmart Corp.*,
    260 F.3d 228 (3d Cir. 2001) ........................................................................................... 5

*Singer Mgmt. Consultants, Inc. v. Milgram*,
    650 F.3d 223 (3d Cir. 2011) ........................................................................................... 4

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
    533 F.3d 162 (3d Cir. 2008) ........................................................................................... 5

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008) ............................................................................................................ 7

**RULES**

Fed. R. Bankr. P. 8007 ............................................................................................................. 2, 3

Fed. R. Bankr. P. 8007(a)(1)(A) ................................................................................................. 3

Fed. R. Bankr. P. 8007(a)(1)(D) ................................................................................................. 3

# INTRODUCTION

Defendants-Appellants Aaron Goodwin, Regina Goodwin, and Eric Goodwin (collectively, the "Goodwins"), by their attorneys, hereby move this Court (the "Motion") for the entry of an order, a proposed form of which is attached hereto as **Exhibit A**, granting a stay pending appeal of the final *Order Granting in Part and Denying in Party Plaintiff's Motion for Summary Judgment*, entered January 29, 2020 [Adv. D.I. 133] (the "Order"). In support of this Motion, the Goodwins respectfully state as follows:

## CONCISE STATEMENT OF FACTS

1. On August 23, 2019, Plaintiff-Appellee David W. Carickhoff, as the Chapter 7 trustee for Decade (the "Trustee"), moved this Court for summary judgment on (a) the Trustee's claim for a judicial declaration that a purported share purchase agreement between Decade and the Goodwins (the "Purported SPA") is valid and enforceable, and (b) counterclaims asserted by the Goodwins for (i) a judicial declaration that the Purported SPA is void *ab initio* as the product of fraud in the execution, or, in the alternative, (ii) a judicial declaration that the Purported SPA is voidable as the product of fraudulent misrepresentation, (iii) a judicial declaration that the Purported SPA is voidable as the product of fraudulent inducement, and (iv) a judicial declaration that the Purported SPA is unenforceable due to the purported contractual counterparts' lack of any meeting of the minds. [Adv. D.I. 86].

2. In connection with the ensuing briefing on the motion for summary judgment, the parties collectively submitted appendices running 3,733 pages in length. [Adv. D.I. 88, 102, 110].

3. At the Trustee's request [Adv. D.I. 111], this Court held oral argument on the summary judgment motion on January 6, 2020.

4.  On January 29, 2020, this Court entered the Order, which granted the Trustee's motion for summary judgment in substantial part for the reasons set forth in an accompanying opinion dated January 29, 2020 [Adv. D.I. 132] (the "Opinion").  The Court held that the sole issues reserved for trial were "substantial performance and ratification." (Opinion at 31).

5.  This Court also ordered that the parties "meet and confer on the [two] Issues for Trial [substantial performance and ratification] and . . . schedule a status conference with the Court within thirty days of the date hereof."  [Adv. D.I. 133].

6.  On February 3, 2020, the Goodwins filed a notice of appeal of the Order pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rule 8003(a) [Adv. D.I. 135].

7.  On February 6, 2020, counsel for the parties met and conferred telephonically.  The Goodwins' counsel requested that the Trustee consent to a stay of proceedings before this Court pending resolution of the Goodwins' appeal.  On February 11, 2020, the Trustee's counsel responded via email that the Trustee does not consent to a stay.

## ARGUMENT

8.  By this Motion, pursuant to Bankruptcy Rule 8007, the Goodwins request that this Court stay the Order and all further proceedings in the above-captioned adversary proceeding pending resolution of the Goodwins' appeal [Adv. D.I. 135].

9.  This Court has subject-matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

10.  The statutory bases for the relief requested herein are section 105 of the Bankruptcy Code and Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409, as well as Fed. R. Bankr. P. 8007(a)(1).

### A.     Standard for Stay Pending Appeal

12.     Bankruptcy Rule 8007 provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal" or "the suspension or continuation of proceedings in a case." Fed. R. Bankr. P. 8007(a)(1)(A), (D).

13.     In evaluating the appropriateness of a stay pending appeal, the following factors come into play:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

14.     The "most critical factors" are "the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm." *Id.* at 568 (quotation marks omitted). However, "the former is arguably the more important piece of the stay analysis." *Id.*

15.     In applying the stay factors, the Third Circuit has adopted a "sliding-scale approach," whereby "[t]he more likely the [applicant] is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor." *Id.* at 569; *see also Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978); *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 920 (3d Cir. 1974).

16.     Because *each* of the four factors weighs in favor of staying proceedings pending resolution of the Goodwins' appeal, this Court should grant the present Motion.

**B.     The Goodwins Are Likely to Succeed on the Merits of Their Appeal**

17.     A stay applicant in the Third Circuit will demonstrate "a sufficient degree of success for a strong showing" where "there is 'a reasonable chance, or probability, of winning.'" *In re Revel*, 802 F.3d at 568-69 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). "[T]he likelihood of winning on appeal need not be 'more likely than not.'" *Id.* at 569.

18.     The Goodwins easily satisfy this standard.

19.     The Opinion contains fundamental errors of legal application and factual determination, including, without limitation:

(i)     Misapplying Third Circuit law requiring that trial courts evaluating a motion for summary judgment "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (cited in Opinion at 12); *see Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 171-73 (3d Cir. 2008) (reversing district court's grant of summary judgment on breach of contract claim where testimony of a single deponent "raise[d] a genuine issue of material fact" concerning the non-moving party's status as an intended beneficiary under the contract);

(ii)    Ignoring binding precedent which forecloses a grant of summary judgment on the present factual record. *See Connors v. Fawn Min. Corp.*, 30 F.3d 483, 493-94 (3d Cir. 1994) (reversing district court's grant of summary judgment for party seeking to enforce contract because "conflicting deposition testimony raises genuine issues

of material fact regarding th[e] defense" of fraud in the execution, where deponents testified that their counterparty "surreptitiously substitute[d] a materially different contract document before both sides execute[d] it");

(iii) Improperly assigning to the Goodwins a "higher standard to perform due diligence prior to signing a contract" (Opinion at 22), where such a heightened standard is not supported by the law of any relevant jurisdiction;

(iv) Ignoring key facts revealed during discovery, including deposition testimony that Christopher Aden, a principal of the Goodwins' purported contractual counterpart, was solely responsible for relaying to the Goodwins material edits to the Purported SPA requested by a third-party lender, but that neither he nor anyone else ever communicated those edits to the Goodwins. [*See* Adv. D.I. 101 at 10]. Such evidence substantially undercuts this Court's unsupported finding that "it is clear that the Goodwins' allegation that Decade concealed substantive changes to the [Purported] SPA is false." (Opinion at 21);

(v) Misconstruing a supposed fact—that Aaron Goodwin was on notice of "the terms the Goodwins claim Decade concealed"—with reference to an October 13, 2015 unexecuted indicative term sheet between 23 Capital and Gotham S&E Holdings. (Opinion at 20-21). Notwithstanding the Opinion's short-cite reference to that unexecuted indicative term sheet as the "23 Capital/Decade Term sheet," the document on which the Court relies does *not* in fact disclose a lending relationship between 23 Capital and Decade, and indeed does not reference the Goodwins or either of the businesses whose shares they had negotiated to sell. Moreover, the Court's unsupported finding conflicts with substantial record evidence that Decade

concealed its lending relationship from the Goodwins, including, among other evidence: (a) Mr. Aden's consistent characterization of 23 Capital in text and email communications with Aaron Goodwin as "our investor," and not as a lender, (b) Mr. Aden's transmission to Aaron Goodwin of an updated letter of intent dated November 1, 2015—*i.e.*, 18 days after the date of the unexecuted term sheet—confirming that there would be no third-party beneficiaries to the parties' share purchase agreement, and (c) Mr. Aden's failure to send the Goodwins the actual loan term sheet executed by 23 Capital and Decade on January 17, 2016—despite his assurance to Decade's counsel that he would do so. [*See* Adv. D.I. 101 at 7-9].

20. Because the Opinion is prone to reversal on each of these grounds (among others), the first, and "arguably the more important piece of the stay analysis," *In re Revel*, 802 F.3d at 568, strongly favors a stay.

**C.   The Goodwins Will Be Irreparably Harmed if a Stay Is Not Granted**

21. A stay applicant must also show that "irreparable injury is *likely* . . . in the absence of a stay." *Id.* at 569 (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008)) (brackets omitted). The Third Circuit has explained that "for irreparable harm we understand the Supreme Court's use of 'likely' to mean more apt to occur than not." *Id.* at 569.

22. A "purely economic injury, compensable in money," constitutes an "irreparable injury . . . where the potential economic loss is so great as to threaten the existence of the movant's business." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011).

23. Absent a stay, the Goodwins face an existential threat to their business.

24. The Goodwins have suffered severe economic and reputational damage as a direct result of the fraud perpetrated by Decade through its principal, Christopher Aden.

25. Prior to the purported closing of the Decade transaction in early 2016, the Goodwins regularly recruited the nation's top NBA-bound star players. Indeed, Aaron Goodwin made Forbes' list of the world's most powerful sports agents in 2016, ranking #40 (four places behind Jay-Z).[2]

26. In the years since, Aaron Goodwin dropped off the Forbes list entirely,[3] and the Goodwins have been unable even to obtain meetings with early-round draft picks.

27. Emblematic of top recruits in the wake of the Decade transaction, the first overall pick of the 2019 NBA draft, Zion Williamson, cancelled a meeting with the Goodwins in connection with his negotiation of a multi-year shoe sponsorship valued in excess of $100 million after learning of the existence of this case. This was despite the Goodwins' extensive experience in negotiating shoe endorsement contracts, including a Nike sponsorship on behalf of Lebron James "worth $87 million that included royalties that eventually pushed that number above $100 million."[4]

28. At a future trial, the Goodwins will demonstrate, through testimony of agents and industry valuation experts, that their damages are directly attributable to the Decade transaction, including, without limitation, negative sports media coverage and industry chatter relating to that transaction and the ensuing litigation.[5]

---

[2] *See* "The World's Most Powerful Sports Agents 2016," Forbes (Sept. 21, 2016), available at https://www.forbes.com/sites/jasonbelzer/2016/09/21/the-worlds-most-powerful-sports-agents-2016/#674382bf3f73.

[3] *See* "The World's Most Powerful Sports Agents 2018," Forbes (Sept. 25, 2018), available at https://www.forbes.com/sites/jasonbelzer/2018/09/25/the-worlds-most-powerful-sports-agents-2018/#2d88e93f536d.

[4] *See* "Lebron James Almost Signed with Reebok Instead of Nike," 247Sports (Apr. 2, 2019), available at https://247sports.com/nba/los-angeles-lakers/Article/LeBron-almost-signed-Reebok-Nike-130815304/; *see also* "Pelicans Star Zion Williamson, Nike's Jordan Brand Agree to Richest Rookie Shoe Deal in NBA History, Per Report," CBSSports.Com (July 24, 2019), available at https://www.cbssports.com/nba/news/pelicans-star-zion-williamson-nikes-jordan-brand-agree-to-richest-rookie-shoe-deal-in-nba-history-per-report/.

[5] *See, e.g.*, "British Private Equity Firm Suing Agents, Stealth SME Founders," Sports Business Journal (Oct. 2, 2017), available at https://www.sportsbusinessdaily.com/Journal/Issues/2017/10/02/Labor-and-Agents/Labor-and-Agents.aspx.

29. The Goodwins are now presented with opportunities to recruit several of the top picks in the upcoming 2020 NBA Draft, on June 25, 2020.

30. But the Goodwins are unlikely to be considered for such lucrative engagements absent public acknowledgment of Decade's fraudulent conduct, which has tarnished the Goodwins' name and reputation.

31. The Order and accompanying Opinion on appeal foreclose such a resolution, since they are premised on the Court's grant of summary judgment to the Trustee on each of the Goodwins' fraud-based counterclaims and the Court's further rejection of "the idea that the SPA is unenforceable due to a lack of meeting of the minds." (Opinion at 30).

32. Under such circumstances, it is unclear what would be achieved by a trial of the two collateral issues identified by the Court, "substantial performance and ratification." (Opinion at 31). Such a determination is irrelevant to both causes of action that remain pending before this Court, *i.e.*, the Trustee's claim for a judicial declaration that the Purported SPA is valid and enforceable, and the Goodwins' counterclaim for a judicial declaration that the Purported SPA is unenforceable due to the purported contractual counterparts' lack of any meeting of the minds.

33. Such a trial on collateral issues will require the parties to expend unnecessary time and resources—efforts and expenses which necessarily will be duplicated in the event the Goodwins prevail on their pending appeal.

34. Moreover, a trial on collateral issues will needlessly delay the Goodwins' efforts to vindicate their good name—without which they will be shut out from lucrative engagements this spring with the potential to salvage their business.

35. Because the Goodwins' business is "more apt . . . than not" to be irreparably harmed in the absence of a stay, *In re Revel*, 802 F.3d at 569, the second stay factor clearly favors a stay.

**D.     A Stay Pending Appeal Will Not Injure Other Parties**

36.    Courts in the Third Circuit "weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three)." *In re Revel*, 802 F.3d at 569.

37.    Here, the Trustee (the lone stay opponent) is not likely to face any irreparable harm if a stay is granted.

38.    Instead, the Trustee will benefit to the same extent as the Goodwins from avoiding expending unnecessary time and resources on a trial of collateral issues, which necessarily will be duplicated in the event the Goodwins prevail on their pending appeal.

39.    Accordingly, the balancing of harms weighs in favor of a stay.

**E.     Granting A Stay Is in the Public Interest**

40.    Finally, in evaluating the appropriateness of a stay, courts in the Third Circuit "take into account where the public interest lies (factor four)—in effect, how a stay decision has consequences beyond the immediate parties." *Id.* (quotation marks omitted).

41.    The Opinion interprets the laws of two of the largest, and most commercially important U.S. jurisdictions, as protecting the perpetrators of a brazen, well-documented, and (for purposes of the motion for summary judgment) acknowledged fraud.

42.    The Court's mischaracterization of New York and California law will undoubtedly serve to chill victims of fraudulent conduct while emboldening perpetrators of fraud everywhere.

**F.     Conclusion**

43.    A stay should be granted where, as here, the balance of harms and public interest weigh in favor of a stay and the Goodwins have demonstrated that they are likely to prevail on appeal. *See Id.*

**CONCLUSION**

For the foregoing reasons, the Goodwins respectfully request that this Court grant the Motion and enter an order, a proposed form of which is attached hereto as **Exhibit A**, granting a stay pending appeal of the final *Order Granting in Part and Denying in Party Plaintiff's Motion for Summary Judgment*, entered January 29, 2020 [Adv. D.I. 133].

| | |
|---|---|
| Dated: February 12, 2020<br>Wilmington, Delaware | Respectfully Submitted,<br><br>**THE ROSNER LAW GROUP LLC**<br><br>*/s/ Jason A. Gibson*<br>Frederick B. Rosner (DE 3995)<br>Jason Gibson (DE 6091)<br>824 Market Street, Suite 810<br>Wilmington, DE 19801<br>Telephone: (302) 777-1111<br>rosner@teamrosner.com<br>gibson@teamrosner.com<br><br>-and-<br><br>**PERKINS COIE LLP**<br>Keith Miller, Esq. (*Pro hac vice*)<br>Gary Eisenberg, Esq. (*Pro hac vice*)<br>Adam Mandelsberg, Esq. (*Pro hac vice*)<br>1155 Avenue of the Americas, 22nd Floor<br>New York, NY 10036-2711<br>Telephone: (212) 262-6900<br>AMandelsberg@perkinscoie.com<br><br>*Counsel to Aaron Goodwin, Regina Goodwin, and Eric Goodwin* |