## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DECADE, S.A.C., LLC, *et al*.,[1]<br><br>        Debtors. | Chapter 7<br><br>Case No. 18-11668 (CSS)<br>(Jointly Administered |
| DAVID W. CARICKHOFF, solely in his capacity as chapter 7 trustee for the estates of DECADE, S.A.C., LLC, *et al.*,<br><br>              Plaintiff,<br>        v.<br>AARON GOODWIN, REGINA GOODWIN AND ERIC GOODWIN,<br><br>              Defendants. | **Adv Proc. No. 19-50095 (CSS)** |

### THE TRUSTEE'S OPPOSITION TO THE GOODWINS' MOTION FOR STAY PENDING APPEAL AND CROSS-MOTION TO MODIFY THE ORDER ON THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

**ASHBY & GEDDES, P.A.**

William P. Bowden (#2553)
Ricardo Palacio (#3765)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
Tel: 302.654.1888

**TROUTMAN SANDERS LLP**

Patrick E. Fitzmaurice
875 Third Avenue
New York, New York 10022
Tel: 212.704.6000

Andrew B. Buxbaum
Troutman Sanders Building
1001 Haxall Point, 15th Floor
Richmond, Virginia 23219
Tel: 804.697.1200

*Special Counsel to David W. Carickhoff as Chapter 7 Trustee*

---

[1]     The Debtors and the last four digits of each Debtors' respective federal Employer Identification Number are: Decade, S.A.C., LLC (8395) ("Decade S.A.C."); Gotham S&E Holdings, LLC (5927) ("Gotham"); Decade S.A.C. Contracts, LLC (7243) ("Decade Contracts"); Decade S.A.C. II, LLC (5679) ("Decade II"); and Decade S.A.C. Executives, LLC (9865) ("Decade Executives") (collectively, the "Debtors").

David W. Carickhoff, chapter 7 trustee (the "<u>Trustee</u>") of the Debtors, by and through his undersigned Special Counsel, hereby submits this: (i) Opposition to the Goodwins' Motion for Stay Pending Appeal of Order Granting in Part and Denying in Part the Trustee's Motion for Summary Judgment (the "<u>Stay Motion</u>"); and (ii) Cross-Motion to Modify the Order.

## I.    SUMMARY OF ARGUMENT

1.      The Goodwins' request for a stay pending appeal should be denied because the Goodwins have not and cannot demonstrate their entitlement to such extraordinary relief. First, the Goodwins have not met their burden of demonstrating a strong likelihood of success on the merits. Both New York and California law are clear that a party is bound by the contract he signs without reading, even where he was induced to sign that contract through fraud. This is especially true where, as here, the signor is a sophisticated commercial party like the Goodwins who should know better. Neither the Stay Motion, nor the Goodwins' opposition to summary judgment, offers any reasonable basis for the Court to abandon these well-established principles.

2.      Second, the Goodwins cannot meet their burden of demonstrating irreparable harm and have provided no evidentiary basis for this Court to find that they will suffer an irreparable injury in the absence of a stay pending appeal. A party claiming it will suffer irreparable harm is required to support that claim with at least some evidence; the Goodwins have none. The Stay Motion should be denied on this basis alone.

3.      Third, the Debtors' estates (the "<u>Estates</u>") would be harmed by the imposition of a stay. Since the 2016 closing of Decade Contracts' purchase of Goodwin Associates Management Enterprises, Inc. ("<u>GAME</u>") and Goodwin Sports Management, Inc. ("<u>GSM</u>"), the Trustee believes that the Goodwins have converted more than $20,000,000 in Debtor assets to their personal use resulting in the Debtors' bankruptcy filings. Permitting the Goodwins to continue receiving payments that belong to the Estates would harm the Estates and creditors, and would

1

violate the automatic stay.

4.      Fourth, the public interest is served by upholding this Court's determination that a party is bound by the contract he signs without reading, particularly where that contract is used and relied on by the counterparty as a basis to obtain credit to finance the transaction reflected in the signed contract. The public interest is also served by denying the Stay Motion to permit the Trustee, a court appointed fiduciary, to carry on with his obligation to marshal the Estates' assets to distribute to creditors and otherwise administer the Estates.

5.      The Stay Motion should also be denied for the Goodwins' failure to provide any justification as to why they are entitled to a stay without posting a bond. The posting of a bond to protect the winning party from the possibility of loss is generally required and a party requesting a stay without a bond must have a good reason for doing so. Here, the Goodwins have offered no reason whatsoever.

6.      Since the February 2016 closing of Decade Contracts' purchase of GAME and GSM, the Debtors have been deprived of more than $20,000,000 in revenue from the contracts acquired with that purchase.[2] And, the Goodwins have offered no accounting and produced no documents or other information indicating what they have done with the Debtors' money for the last 4+ years. Should the Court think that a stay pending appeal is appropriate here – and the Trustee submits that it is not – then the Court should condition that stay on the Goodwins posting a bond equal to the value of the Estates' assets they have received since February 2016 and expect to continue to receive during the pendency of the appeal, plus interest. The Trustee suggests that

---

[2]      The Trustee acknowledges that the Debtors received slightly more than $1,000,000 from the Goodwins during 2016.  Based on public press reports, the Trustee believes the value of the player contracts have increased overtime.  (*See* https://www.nba.com/article/2019/06/30/report-damian-lillard-blazers-near-supermax-deal).

this amount should be no less than $25,218,386.80.[3]

7.      The Trustee submits that the Court should also grant his Motion to Modify the Order. The parties – the Trustee and the Goodwins – agree that the Opinion resolved in the Trustee's favor all issues raised by the Trustee's summary judgment motion. In other words, the parties agree that the Trustee won the motion – the effect of which resolves the Trustee's Declaratory Judgment action, finding the Debtors purchased GAME and GSM from the Goodwins in February 2016.

8.      As the Court will recall, the Trustee's summary judgment motion sought the entry of summary judgment on the Trustee's declaratory judgment claim and dismissing the Goodwins' counterclaims. While the parties agree that the Opinion necessarily decided each of the claims in the Trustee's favor, the Order did not direct the entry of judgment in the Trustee's favor but rather suggested that issues remained to be tried.

9.      But, the parties agree that no such issues remain and, as stated, the Trustee has prevailed. As a result, the Trustee submits that the Court should modify the Order to enter summary judgment for the Trustee on his claim for declaratory judgment and on the Goodwins' fourth counterclaim.

10.      For these reasons and as further set forth below, the Court should deny the Stay

---

[3]      Delaware's permitted interest rate is 5% over the Federal Reserve discount rate. *See* 6 Del. Code § 2301. The Federal Reserve discount rate is 2.25%. *See* BOARD OF GOVERNORS OF THE FEDERAL RESERVE BOARD, Policy Tools: Discount Rate (Feb. 25, 2020), https://www.federalreserve.gov/monetarypolicy/discountrate.htm.

Pre-Judgment Interest = $3,270,710.05 [(Revenue Owed at Closing: $3,287,198 x 7.25% x 4 = $953,287.42); (2015/16: $2,794,200 x 7.25% x 4 = $810,318 ); (2016/17: $3,580,000 x 7.25% x 3 = $778,650); (2017/2018: $2,456,750 x 7.25% x 2 = $356,228.75); (2018/2019: $2,528,506 x 7.25% = $183,316.69); (2019/2020: $2,605,644 x 7.25% = $188,909.19); (Total: $953,287.42 + $810,318 + 778,650 + 356,228.75 + $183,316.69 + 188,909.19 = $3,270,710.05)].

Post-Judgment Interest = $1,826,482.76 [($20,121,194 x 7.25% = $1,458,786.56); ($1,458,786/365 = 3,996.68); ($3,996.68 x 457 = $1,826,482.76)]. The "457" days represent the anticipated length of the appeal. This number is modeled after the amount of time it took to receive a final order from the United States District Court for the District of Delaware on the Goodwins' appeal from the Order entered November 5, 2018 approving the motion filed by the Trustee seeking approval of a settlement stipulation by and between the Trustee and 23 Capital Limited in the Chapter 7 cases of Decade S.A.C. and Gotham.

3

Motion and grant the Trustee's Cross-Motion to Modify the Order.

## II.    ARGUMENT

### A.    <u>The Goodwins Are Not Entitled To A Stay Pending Appeal</u>

11.    A stay pending appeal is "extraordinary" relief to be granted in limited circumstances. *See In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012), *aff'd sub nom.*, 729 F.3d 332 (3d Cir. 2013), *aff'd*, 532 F. App'x 264 (3d Cir. 2013), *aff'd*, 729 F.3d 311 (3d Cir. 2013) (citing *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)); *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013).

12.    This relief is only available where the movant can show that: (1) they have a strong likelihood of success on the merits of their appeal; (2) they will be irreparably injured absent a stay; (3) issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) the public interest lies in favor of staying proceedings pending the appeal. *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

13.    The court may deny a stay if the moving party fails to satisfy even one of these four factors. *See, e.g., In re Polaroid Corp.*, No. 02-1353, 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004) ("If a party fails to establish one of the four prongs, a court may deny the requested stay."); *In re Tallygenicom, L.P.*, Bankr. No. 09-10266, 2009 WL 734680, at *1 (D. Del. Mar 20, 2009) ("A court may deny a motion for a stay if the movant fails to make a showing on any of the above factors.")

14.    The Goodwins fail to meet their burden on all four factors.

### B.    <u>The Goodwins Cannot Show A Likelihood Of Success On The Merits</u>

15.    A party seeking a stay pending appeal is required to show, among other things, a strong likelihood of success on appeal. *Conestoga Wood Specialties Corp.*, 2013 WL 1277419, at

*3 ("Given our standard, because Plaintiffs failed to prove their likelihood of success on the merits, we DENY their request for extraordinary relief.")

16.    It is not enough that the chance of success on the merits be "better than negligible"' because ". . . at a minimum, serious questions going to the merits" is required.  *In re Culp*, 550 B.R. 683, 696 (D. Del. 2015). The movant must demonstrate "a reasonable chance, or probability, of winning." *In re Newton*, No. 19-1633, 2019 WL 4522119, at *1 (3d Cir. May 29, 2019).

17.    In determining whether a movant has made a strong showing of a likelihood of success on appeal, courts examine "the strength of the case the movant will present on appeal" as well as "whether the movant seeks to raise issues on appeal that are substantial, serious, and doubtful so as to make them fair ground for litigation." *In re Countrywide Home Loans, Inc.*, 387 B.R. 467, 471 (Bankr. W.D. Pa. 2008) (citing *In re Polaroid Corp.*, No. 01-10864, 2004 WL 253477, at *1).

18.    The Court's Opinion held that the Goodwins were bound by the Share Purchase Agreement ("SPA"),[4] and that their fraud-based and other defenses to enforcement of that agreement were completely without merit, because they admittedly signed the SPA's signature page without reading, or even asking for, a copy of the contract.  (Opinion [D.I. 132] at pp. 17-29).

19.    The Opinion noted that the Court's conclusion would be the same regardless of whether the Court analyzed the question under the law of New York, as argued by the Trustee, or the law of California, as suggested by the Goodwins.  (Opinion [D. I. 132] at pp. 13-17).

20.    To establish their likelihood of success on the merits of their appeal so as to obtain a stay, the Goodwins must show that they have "a reasonable chance, or probability, of winning"

---

[4] Defined in the Complaint as the Share Purchase Agreement among Aaron Goodwin, Eric Goodwin, as sellers, Decade Contracts, as purchaser, and Decade S.A.C. [*See* D.I. 1 at ¶ 20].

on that appeal. *See In re Newton*, No. 19-1633, 2019 WL 4522119, at *1.

21.     The Goodwins argue that they have made this showing because the Court "made fundamental errors of legal application and factual determination" in granting the Trustee's summary judgment motion. (Stay Motion at ¶ 19). These claims are contrary to the record and without any support.

> **a.     The Goodwins Have Not Shown That They Have A Reasonable Chance, Or Probability, Of Winning Their Appeal**

22.     The Goodwins' first argument is that the Court "misappl[ied] Third Circuit law requiring that trial courts evaluating a summary judgment motion view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor." (Stay Motion at ¶ 19(i)). But, the Goodwins do not say how the Court misapplied this precedent, though they are required to.

23.     A court being told it previously made legal errors is not obligated to guess at what those errors might be, the Goodwins must point them out. *In re Commonwealth Renewable Energy, Inc.*, No. 14-22724, 2016 WL 1238199, at *4 (Bankr. W.D. Pa. Feb. 10, 2016) (movant "fails to identify any legal error with respect to the Court's conclusions . . . [thus] the Movants have again fallen short in showing a strong likelihood of success on the merits); *see also In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 133 (Bankr. D. Del. 2016) ("In practice, the movant must point to "controlling decisions or data . . . that might reasonably be expected to alter the conclusion reached by the Court.") They failed to do so here because there are no legal errors in the Opinion and the Court – both in the Opinion and at oral argument – applied the relevant legal standard. (*See, e.g.*, Opinion [D.I. 132] at pp. 11-13, 21, 28; MSJ Tr. [D.I. 131] at pp. 23:13- 28:16).

24.     Throughout the adversary proceeding, including in opposition to the Trustee's motion for summary judgment, the Goodwins' entire argument was that, despite signing a contract

to sell their businesses, the sale was void or voidable because of the alleged fraud of one of the principals of the Debtor. Indeed, the Court assumed the facts presented by the Goodwins to be true. (Opinion [D.I. 132] at p. 21; MSJ Tr. [D.I. 131] at p. 23:13-17). It is hard to imagine a clearer case of viewing evidence in the light most favorable to a party by assuming all of that party's evidence to be true. (Opinion [D.I. 132] at p. 28; MSJ Tr. [D.I. 131] at p. 23:13-17). In any event, the Goodwins have not shown a reasonable chance or probability of winning their appeal on this issue.

25.     Second, the Goodwins argue that the Court ignored "binding precedent," in the form of *Connors v. Fawn Min. Corp.*, 30 F.3d 483 (3d Cir. 1994), in granting the Trustee's summary judgment motion. (Stay Motion at ¶ 19(ii)). According to the Goodwins, *Connors* "forecloses a grant of summary judgment on the present factual record" because it stands for the proposition that where 'conflicting deposition testimony' exists, summary judgment is unwarranted. (*Id.*)

26.     There is nothing precedential about *Connors* for this case. This is true both because *Connors* does not address the relevant substantive law of either New York or California and because there is no conflicting deposition testimony in this case.

27.     The Court will recall that the parties argued that the law of either New York or California governs the dispute between them concerning whether a party is bound by a contract he signed without reading. (MSJ Tr. [D.I. 131] at pp. 3:18-4:5:3). In the Opinion, the Court noted that the law of these jurisdictions was the same for the relevant issues and held that under either state's law, the Goodwins were bound by the SPA. (Opinion [D.I. 132] at pp. 13-29).

28.     But, *Connors* does not address the law of either New York or California and thus cannot be a precedential interpretation of the legal issues raised by the Trustee's summary judgment motion. And, *Connors* is also factually distinguishable because the Third Circuit's

opinion notes that a key factor in that court's decision was the presence of conflicting deposition testimony on an important issue before the court. There is no such conflicting deposition testimony here and the Goodwins certainly have not cited any. The Goodwins' reliance on *Connors* is misplaced and does not suggest that they have a reasonable chance of prevailing on their appeal.

29.     The third issue raised by the Goodwins is their contention that the Court erred by imposing a heightened duty of care on sophisticated commercial parties like the Goodwins. This standard, the Goodwins claim, "is not supported by the law of any relevant jurisdiction." (Stay Motion at ¶ 19(iii)). Again, the Goodwins fail to cite a single case or any other authority in support of their argument. The reason is simple, the Goodwins are wrong. *See Conquest Int'l. v. Cole*, No. 49-2003, 2015 WL 4070253, at *9 (Cal. Super. Mar. 5, 2015) (court held: "[i]t is entirely unreasonable for [a] sophisticated and successful businessman like [plaintiff] with an accounting background to sell a company that represents his professional life's work by relying on an appraisal he claims to have never read and simply accepting [defendant's] representation of what the appraisal said"); *Mohebbi v. Khazen*, No. 13-03044, 2014 WL 6845477, at *5 (N.D. Cal. Dec. 4, 2014) ("Courts in California and across the country have consistently held that a party cannot avoid an arbitration clause simply because the contract is written in another language . . . . This is particularly true when the contracting parties are sophisticated entities . . ."); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 165 F. Supp.2d 615, 623 (S.D.N.Y. 2001) ("In evaluating justifiable reliance, the plaintiff's sophistication and expertise is a principal consideration"), *aff'd*, 343 F.3d 189, 195 (2d Cir. 2003). *See*, *also*, *UST Private Equity Inv'rs Fund, Inc. v. Salomon Smith Barney*, 288 A.D. 87, 88 (1st Dep't 2001) (as a matter of law, a sophisticated plaintiff cannot establish justifiable reliance on alleged misrepresentations if plaintiff failed to make use of the means of verification).

30.     Fourth, the Goodwins contend that the Court ignored "key facts" concerning the

alleged fraud by Christopher Aden that they claim induced them to sign the SPA's signature page. (Stay Motion ¶ 19(iv)). Specifically, the Goodwins contend that the Court ignored the 'key fact' that Aden was responsible for transmitting edits made to the SPA to the Goodwins but failed to do so. (*Id.*) But, the Court did not ignore this supposedly key fact; instead, it assumed it to be true along with the related contention urged by the Goodwins on summary judgment that Aden then lied to them saying that the SPA was unchanged from a prior draft sent to them months earlier.[5]

31.    Simply put, the Goodwins do not demonstrate that they have a reasonable chance of prevailing on appeal by arguing that the Court ignored supposedly key facts that the Court assumed the Goodwins had successfully established.

32.    It is also true, however, that a Court is not required to give a non-movant the benefit of the doubt concerning facts that are definitively established by the summary judgment record. *Kadakia v. Rutgers*, 633 F. App'x 83, 86 (3d Cir. 2015) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In other words, the Court was not required to view facts in the light most favorable to the Goodwins if the record conclusively established that the Goodwins' position was without merit.

33.    That is the case here; the Goodwins contend they did not know that changes were being made to the underlying agreements with Decade, but the record is clear that Aaron Goodwin was aware at the time that such changes were being made and discussed them with Debtors and their counsel. (*See* Trustee's MSJ Appendices at A. 162, A. 183, A. 194, A. 195, A. 198, A. 200,

---

[5]    As the Trustee argued on summary judgment, the Goodwins' contention here is belied by the record and they would not be able to establish an actionable misrepresentation by Aden at trial. (Trustee's MSJ Reply Br. [D.I. 109] at pp. 5-7, Ex. A). But, for purposes of summary judgment, the Trustee assumed that the Goodwins could establish Aden's fraud but argued that it was irrelevant because the Goodwins' own conduct in signing the SPA's signature page without reading it precluded their recovery as a matter of law. (Trustee's MSJ Br. [D.I. 87] at p. 11; MSJ Tr. [D.I. 131] at p. 23:13-17). The Court correctly held that to be the case. (Opinion [D.I. 132] at pp. 17-29; MSJ Tr. [D.I. 131] at pp. 23:13-28:16).

A. 206, A. 219, A. 226, A. 237, A. 364-409, A. 408, C. 1, C. 11, C. 37, C. 141-142). Because they had specific knowledge of certain changes being made to their agreements, the Goodwins cannot pretend to be unaware of others, particularly where they took no steps to review the contracts or their terms.

34.    The Goodwins' fifth and final argument in support of their contention that they have a reasonable chance, or probability, of winning on appeal is that the Court misconstrued the record concerning their awareness of 23 Capital's role in the transaction, particularly its first priority security interest over the assets Decade Contracts acquired from the Goodwins. (Stay Motion ¶ 19(v)). Indeed, the Stay Motion argues that the relevant evidence "does not in fact disclose a lending relationship between 23 Capital and Decade, and indeed does not reference the Goodwins or either of the businesses whose shares they had negotiated to sell." (*Id.*)

35.    This is totally irrelevant. There is no requirement, and the Court did not find one, that the Decade/23 Capital term sheet mention the Goodwins by name in order for them to know that 23 Capital was involved in the transaction and would be taking a security interest over the property they were selling to Decade Contracts. It is certainly enough for the term sheet to make plain 23 Capital's role – and the term sheet does that by describing Debtor Gotham as the 'Borrower' and 23 Capital as the 'Lender' – and also indicates that 23 Capital was to have "the rights to collect all gross income received by the company ahead of any other connected or 3rd party interest," and "security (by way of absolute assignment or other) over all contracted receivables (made up of payments from the NBA, MLB, Nike and Adidas)." (Trustee's MSJ Appendix at A. 383).

36.    The Goodwins knew that they were the only NBA agents Decade was transacting with and also knew that the receivables owned by GAME and GSM included payments due from contracts they had negotiated with Nike and Adidas for their clients. (Trustee Appendices at A.

863(113:3)-A. 865(122:5), A. 958(40:18)–A. 956(42:6), A. 978(125:5-12)).

37.    In any event, the record is replete with evidence of Aaron Goodwin's awareness of 23 Capital, its role in the transaction as Decade's lender and that it, not Decade, was in control of the drafting and terms of all relevant agreements. (Trustee's MSJ Appendices at A. 158, A. 161, A. 190, A. 194, A. 195, A. 198, A. 200, A. 206, A. 214, A. 223, A. 237, C. 1, C. 2-13).

38.    In sum, the Goodwins have not shown that they have a reasonable chance, or probability, of winning on their appeal. As a result, they have not and cannot demonstrate a likelihood of success on their appeal. This failure alone requires the denial of the Stay Motion. But, as set forth more fully below, the Goodwins have also failed to establish any of the other elements required to obtain a stay pending appeal.

### C.    The Goodwins Have Failed To Satisfy Their Burden Of Showing Irreparable Harm

39.    A party seeking a stay pending appeal is required to show that they will be irreparably harmed absent the stay, and that this harm is "more apt to occur than not." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015) ("the applicant must demonstrate that irreparable injury is likely [not merely possible] in the absence of a stay.") Where, as here, the alleged harm is purely economic, the movant must show that the economic harm is "so great as to threaten the existence of the movant's business." *Id.* at 572.

40.    Such a showing requires at least some evidence, some factual showing to support the claimed irreparable harm. *Id.* at 572-73 ("Absent some sort of declaration or other evidence in the record that a stay would case substantial harm, the harm to [the party] was at best speculative.")

41.    As the Third Circuit ruled in *Revel*, "the adequacy of the proof provided plays an important role in evaluating the harm that will occur depending upon whether or not a stay is granted." *Id*. Where, as here, the movant does not introduce any evidence in support of its claim

of irreparable harm, such claims are at best speculative and cannot support the imposition of a stay.

42.     The Stay Motion offers no factual support whatsoever for the Goodwins' argument that they "face an existential threat to their business" absent a stay. Initially, it is not 'their business.' The Goodwins sold GAME and GSM to Decade in 2016 and have been converting the Debtors' assets ever since that time. This conversion and dissipation of the Estates' assets has continued even after the Debtors' 2018 bankruptcy filings.

43.     The best the Goodwins can do is point to a list of the world's most powerful sports agents published yearly by Forbes Magazine in support of their claims of economic harm. The Goodwins note that Aaron Goodwin appeared at number 40 on that list in 2016 and had dropped off it by 2018. (Stay Motion at ¶¶ 25-26, fn. 2-3). These are the facts that allegedly show an existential threat to the Goodwins' business. In relaying these facts to the Court, the Goodwins have not told the whole story. The Forbes list was also published in 2019 and Aaron Goodwin was back on the list, at number 36.[6]

44.     The balance of the Stay Motion's assertions of irreparable harm boil down to bald assertions made with no factual support (*e.g.*, Stay Motion at ¶¶ 26, 27) and claims of exigency that are belied by their own actions. (Stay Motion at ¶ 34). For example, the Stay Motion suggests that the Goodwins' goal is to have the appeal resolved in time for them to benefit from that resolution this spring (*id*), yet they have taken no action to expedite the appeal and have submitted a briefing schedule to the district court that effectively precludes an early resolution of the appeal. (Fitzmaurice Decl. at ¶ 17, Ex. B).

45.     The Goodwins have not offered any evidence that they would suffer irreparable harm in the absence of a stay pending appeal and their request for a stay should therefore be denied.

---

[6] The 2019 list appears to have been published on October 21, 2019, well before the Stay Motion was filed suggesting that the Goodwins' failure to reference the 2019 list was not an oversight, but rather an attempt at obfuscation. (*See* https://www.forbes.com/sites/jasonbelzer/2019/10/21/most-powerful-sports-agents/#4ace8dbe3b27).

D.    <u>**Granting The Stay Motion Would Continue To Harm The Estates**</u>

46.    A party seeking a stay pending appeal is also required to show that imposing the stay would not harm other interested parties. Here, a stay would prevent the Trustee, on behalf of the Estates, from pursuing remedies relating to the Court's determination that the SPA is a valid and binding agreement between Debtors Decade Contracts and Decade S.A.C. and the Goodwins.

47.    As the Court is aware, pursuant to the SPA the Debtors acquired GAME and GSM and contracts worth millions of dollars to those companies. Since the acquisition, the Debtors have been unable to obtain any part of those assets because the Goodwins have converted the contracts and related revenue, harming the Debtors and leading to their bankruptcy filings. If the Court denies the Stay Motion, as the Trustee submits that it should, then the Trustee can begin the process of collecting from the Goodwins and third parties the assets that have been wrongfully diverted from the Debtors.

48.    A schedule prepared by Decade in connection with the acquisition, using contracts and other information supplied by the Goodwins, shows that over the first 5 years post-closing, GAME and GSM, and therefore the Debtors, were entitled to receive $20,121,194 from the players.  (Fitzmaurice Decl. at Ex. A).

49.    But, the Debtors never received those funds because the Goodwins converted them to their personal use. That conversion and dissipation of the Estates' assets caused the Debtors' bankruptcy filings and has continued to harm the Debtors throughout their bankruptcy cases. Entering a stay pending appeal would only permit the Goodwins to continue to convert and dissipate the Estates' assets, harming creditors.

50.    When the value of the estate is diminishing, interested parties may be harmed simply by maintaining the status quo pending appeal.  *See Halperin v. Moreno* (*In re Green Field Energy Servs., Inc.*), No. 13-12783, 2017 WL 2729065, at *3 (Bankr. D. Del. June 23, 2017) (citing

13

*In re Taylor*, 450 B.R. 577, 580 (Bankr. W.D. Pa. 2011)) (holding a stay would substantially harm the other parties in the litigation by recognizing "the estate stands to lose sufficient funds to pay all creditors in full while the transferees (all of whom are relatives or other insiders of the Debtor and are co-defendants with her in the fraudulent conveyance adversary action) retain control of what is alleged to be in excess of $1 million in estate funds" throughout the stay). *See also In re Lickman,* 301 B.R. 739 (Bankr. M.D. Fla. 2003) (defendants sanctioned for violating stay were not entitled to stay pending appeal).

51.    In balancing the harms for purposes of a stay request, courts have found that unnecessary delays in creditor distributions weigh in favor of denying the stay, particularly where there is not a substantial likelihood of success on the merits. *In re BGI, Inc.*, No. 11-10614, 2012 WL 5392208, at *6 (Bankr. S.D.N.Y. Nov. 2, 2012) (finding that holders of allowed general unsecured claims would face significant harm from a stay of plan distributions pending an appeal, "including the loss of valuable working capital for an indefinite period of time [and] lost opportunities to invest the funds"); *In re St. Mary Hosp.*, 157 B.R. 235, 237 (E.D. Pa. 1993) (denying stay pending appeal where there was "no substantial likelihood of success on the merits" and "creditors could be harmed by a further delay of payment").

### E.    Denying The Stay Motion Is In The Public's Interest

52.    The final factor that must be shown for a party to obtain a stay pending appeal is that granting the stay request is in the public interest; that is, "how a stay decision has consequences beyond the immediate parties." *Revel*, 802 F.3d at 569. Because the Goodwins have not made the requisite showing of likelihood of success on the merits or irreparable injury, an inquiry into public interest is not necessary. *Id* at 571. But, to the extent the Court decides to examine the public interest here, it lies in favor of denying the Stay Motion.

53.    The public interest is served here by denying the Stay Motion and moving forward

14

with the Court's decision correctly ruling that a party to a contract is bound by the contract where he signs it without reading it. This is especially true where, as here, third-parties rely to their detriment on the existence of that contract in extending credit. *See McWilliams v. Mason*, 31 N.Y. 294 (1865) (holding if a party who signed an agreement procured by fraud is chargeable with negligence, he is liable to an innocent third-party who acted to his prejudice upon the faith of the agreement).

54.     The public interest is also served here by allowing the Trustee, a court appointed fiduciary, to move forward with his obligation to marshal the Estates' assets for distribution to creditors. *In re W.R. Grace & Co.*, 475 B.R. at 208 ("Public policy weighs in favor of facilitating quick and successful reorganizations of financially troubled companies. This policy is furthered by the policy favoring finality of bankruptcy judgments.")

## III.    IF THE COURT WERE TO GRANT A STAY PENDING APPEAL, THE GOODWINS SHOULD BE REQUIRED TO POST A BOND

55.     As shown above, the Stay Motion is deficient on its face and should be denied. But the motion also fails because it neither conditions the stay request on the posting of a bond, nor offers any reasonable excuse as to why a bond is not necessary here. *De la Fuente v. DCI Telecomm. Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) (movant has "the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond"); *See also In re W.R. Grace & Co.*, 475 B.R. at 209 ("Finally, the Court pauses to comment on [movant's] failure to even acknowledge that a party seeking a stay under such circumstances may be required to post a supersedeas bond in order to preserve the status quo and protect the bankruptcy estate and its creditors from incurring costs incident to the stay.")

56.     The law is well settled that a stay pending appeal will generally only be entered

where the movant posts a bond to protect the winning party from the possibility of loss resulting from the appeal. *VICI Racing, LLC v. T-Mobile USA, Inc.*, 921 F. Supp. 2d 317, 335 (D. Del. 2013), *vacated in part on other grounds*, 763 F.3d 273 (3d Cir. 2014); *In re W.R. Grace & Co.*, 475 B.R. at 209 (citing *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 351, 368 (S.D.N.Y. 2007)) (requiring appellants to "post a substantial bond that is commensurate with the threatened loss to the non-moving parties" and that protects the prevailing parties "against any loss that might be sustained as a result of an ineffectual appeal"), *aff'd,* No. 07-0279, 2007 WL 7706743 (2d Cir. 2007). *See also In re Tribune Media Co.,* 799 F.3d 272, 281-82 (3d Cir. 2015) (Court upheld conditioned stay of plan confirmation orders pending appeal on the posting of a supersedeas bond); *see also In re Tower Automotive, Inc.*, No. 06-2105, 2007 WL 1975447 (S.D.N.Y. 2007) (upholding bond requirement to stay action pending an appeal of a nonmonetary declaratory judgment); *J. Perez & CIA, Inc. v. U.S.*, 747 F.2d 813 (1st Cir. 1984) (then Circuit Judge Stephen Breyer held the court had power to require a bond "whether or not judgment was monetary in nature").

57.    Here, the Goodwins seek to appeal from the Court's determination that the SPA is a valid and enforceable contract. Pursuant to that contract, Debtor Decade Contracts acquired 100% of the issued and outstanding shares of GAME and GSM and all of the assets owned by those companies. These assets include valuable agency contracts and related payment rights and receivables whose value exceeded $20,000,000 as of February 2016.  (Fitzmaurice Decl. at Ex. A).

58.    In other words, but for the Goodwins' conversion and dissipation of the Estates' assets the Debtors would be $20,000,000 better off than they are today and would not be in bankruptcy. Absent a stay, the Trustee can now begin the process of collecting those funds, plus interest, from the Goodwins and third parties. Thus, in order to obtain a stay, and prevent those

collection efforts, the Goodwins should be required to post a bond in the amount of $25,218,386.80. *In re Adelphia Commc'ns Corp.*, 361 B.R. at 351 (If a stay pending appeal is likely to harm the appellee or other parties in interest, "and there is no good reason not to require the posting of a bond, then the court should set a bond at or near the full amount of the potential harm to the non-moving parties.")

## IV.    THE COURT SHOULD MODIFY THE ORDER ON THE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT TO A FINAL JUDGMENT IN THE TRUSTEE'S FAVOR

### A.    <u>The Parties Agree That The Order Fully And Finally Resolves All Issues In This Case Such That There Is Nothing Left For Trial</u>

59.    The Court's Order states that the Trustee's summary judgment motion was granted in part, and denied in part. (Order [D.I. 133] at p. 1). But, when the parties met and conferred concerning the issues that remained for trial after the issuance of the Opinion and Order, they agreed that there were none; the Opinion had decided all relevant issues in the Trustee's favor. (Fitzmaurice Decl. at ¶ 9).

60.    These were not mere words, the Goodwins followed them with action. On February 3, 2020, the Goodwins filed a notice of appeal from the Order pursuant to 28 U.S.C. § 158(a)(1) and Rule 8003(a) of the Federal Rules of Bankruptcy Procedure. (Fitzmaurice Decl. at ¶ 10). These provisions address appeals as of right from final orders and judgments. An order is 'final' for these purposes when it fully and completely resolves all outstanding issues in the adversary proceeding. *Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)) (the Supreme Court defined a "final decision" for purposes of appeal "generally [as] one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.")

61.    Thus, notwithstanding the provisions of the Order that deny, in part, the Trustee's summary judgment motion the Goodwins believe that the Order and Opinion are final judgments

17

that resolve the summary judgment motion in the Trustee's favor. The Trustee agrees.

62.     After the issuance of the Opinion and Order, there are no issues left for trial in this adversary proceeding and the Order is a 'final' order pursuant to Bankruptcy Rule 7054. Because the text of the Order suggests that it is not final, the Trustee submits that the Court should modify the Order by awarding summary judgment to the Trustee on Count One of his Complaint and the Goodwins' Fourth Counterclaim. With these modifications, the Order will reflect its 'finality' as agreed upon by the parties.

**B.      The Court Has The Authority To Modify The Order**

63.     To the extent the Court finds that the Order, as issued, is not a final order, then it has the authority to modify the Order as requested by the Trustee pursuant to Bankruptcy Rule of Procedure 7054. That Rule provides: "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims." Thus, Rule 7054(b) permits the Court to grant the Trustee's cross-motion and modify the Order as requested.

64.     To the extent the Court finds that the Order, as issued, is a final order, the Order should be modified as requested by the Trustee to reflect that reality. However, the Court may believe that the pendency of the Goodwins' appeal deprives it of jurisdiction to modify the Order. In that instance, Bankruptcy Rule of Procedure 8008 permits the Court to issue an indicative ruling that, but for the pendency of the appeal, the Court would grant the Trustee's motion and modify the Order as requested. *See* Rule 8008(a)(3). The Trustee submits that the Court should enter such an order under Rule 8008(a)(3) so that the Trustee can obtain remand of the case from the District Court to permit the Court to grant the Trustee's Cross-Motion and modify the Order. *See* Rule 8008(c); *see also In re Energy Future Holdings Corp.*, No. 14-10979, 2016 WL 6808958 (Bankr. D. Del. Nov. 17, 2016).

## V.    CONCLUSION

For all of the reasons set forth above, the Goodwins' Stay Motion should be denied and the Trustee's Cross-Motion to Modify the Order on the Trustee's Motion for Summary Judgment should be granted.

| | |
|---|---|
| **ASHBY & GEDDES, P.A.** | **TROUTMAN SANDERS LLP** |
| By: _/s/ Ricardo Palacio_ | Patrick E. Fitzmaurice |
| William P. Bowden (#2553) | Jenna C. Hutchinson |
| Ricardo Palacio (#3765) | 875 Third Avenue |
| 500 Delaware Avenue, 8th Floor | New York, New York 10022 |
| P.O. Box 1150 | Tel: 212.704.6000 |
| Wilmington, Delaware 19899-1150 | Fax: 212.704.6288 |
| Tel: 302.654.1888 | |
| Fax: 302.654.2067 | Andrew B. Buxbaum |
| | Troutman Sanders Building |
| _Special Counsel to David W. Carickhoff_ | 1001 Haxall Point, 15th Floor |
| _as Chapter 7 Trustee_ | Richmond, Virginia 23219 |
| | Tel: 804.697.1200 |
| | Fax: 804.697.1339 |
| | |
| | _Special Counsel to David W. Carickhoff_ |
| | _as Chapter 7 Trustee_ |