

Pillsbury Winthrop Shaw Pittman LLP

31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Patrick E. Fitzmaurice
tel: +1.212.858.1171
patrick.fitzmaurice@pillsburylaw.com

August 24, 2020

**BY ECF**

Hon. Christopher S. Sontchi
Chief United States Bankruptcy Judge
United States Bankruptcy Court, District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

Re:    **In re Decade, S.A.C., LLC, Case No. 18-11668 (CSS)**
       **Carickhoff v. Goodwin, Adv. Proc. No. 1:19-50095 (CSS)**

Dear Chief Judge Sontchi:

Together with Ashby & Geddes, P.A., we are proposed special counsel to David Carickhoff, the chapter 7 trustee (the "Trustee") of the Debtors and plaintiff in the referenced adversary proceeding. In accordance with paragraphs 2 - 4 of the Court's July 6, 2020 scheduling order, the Trustee submits this motion *in limine* and requests an order precluding the Defendants from offering testimony or evidence, or making any argument, that the terms of the agreement between the parties differ from those contained within the four corners of the SPA and the other documents (such other agreements, the "Other Transaction Documents") executed by the parties in February 2016.

As the Court is aware, the Trustee's complaint seeks a declaratory judgment that the SPA is valid and enforceable according to its terms such that Debtor Decade Contracts acquired GAME and GSM, together with all the assets of those companies, in February 2016. Prior to the Court's January 29, 2020 summary judgment decision (the "SJ Opinion"), Defendants defended against these claims by arguing that they were fraudulently induced to enter into the SPA, thereby rendering the contract unenforceable. The Goodwins also argued that the SPA was unenforceable because of a lack of a meeting of the minds between the parties. Each of these arguments by Defendants is grounded in the idea that the parties' agreement included terms different from those contained in the SPA and Other Transaction Documents. *See, e.g.*, Defendants' Answer with Counterclaims and Affirmative Defenses, D.I. 7, at Counterclaims ¶¶ 6, 53, 56-57, 62.

In the SJ Opinion, the Court rejected those arguments and granted the Trustee summary judgment dismissing Defendants' First, Second and Third Counterclaims, as well as that portion of their Fourth Counterclaim that asserted that the SPA was unenforceable due to a lack of meeting of the minds. D.I. 132 at pp. 24-32. Notwithstanding the Court's rulings in the SJ Opinion, the Trustee is concerned that Defendants may seek to introduce at trial evidence that the parties' agreement contains terms that are not included in the SPA and Other Transaction Documents.

On April 14, 2020, the parties submitted a joint letter to the Court that, among other things, described the issues to be resolved at the upcoming trial. For their part, Defendants asserted that

Hon. Christopher S. Sontchi
August 24, 2020
Page 2

they "will seek to establish their Fourth Counterclaim that argues that the SPA is unenforceable. The Goodwins also reserve the right to offer evidence in support of their affirmative defenses to the Trustee's claims, and any other rights or defenses they may have." D.I. 162 at p. 2.

It is not clear what arguments or evidence Defendants will offer in support of their defenses, nor which defenses they will present at trial, but several defenses listed in Defendants' Answer with Affirmative Defenses and Counterclaims could be construed to include assertions that Decade Contracts is not the owner of GAME and GSM because the parties' agreement includes terms other than those described in the SPA, including without limitation, the terms of the draft agreements between Defendants and Stealth SME ("Stealth"). *See, e.g.*, D.I. 7 at Defendants' Seventh, Eighth, Tenth, Twelfth, Twenty-First, Twenty-Third, Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth and Thirtieth defenses. It is also possible that Defendants will make similar arguments under the guise of "any other rights and defenses they may have" and which they have reserved for trial. The Trustee understands in this regard that Defendants may offer evidence and/or make arguments that the terms of the parties' agreement were modified by them following the February 2016 closing of the transaction.

Any such argument has already been rejected by the SJ Opinion and is otherwise barred by the terms of the SPA itself and Defendants should therefore be precluded from offering any testimony, evidence or argument in support of such a claim. The SJ Opinion precludes Defendants from arguing that: (1) they were fraudulently induced into entering into the SPA through claims that the parties' agreement included terms not included within the SPA itself (D.I. 132 at p. 29), including without limitation, the terms of the draft agreements between Defendants and Stealth (D.I. 132 at p. 5); and (2) the parties' agreement was not consummated because the parties failed to include in the SPA certain material terms they had agreed to (D.I. 132 at pp. 24-32). Such evidence is therefore inadmissible by virtue of the SJ Opinion. *See Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (In addition to being barred by collateral estoppel, plaintiff should also be precluded from relitigating this issue under the "law of the case" doctrine, which "limits relitigation of an issue once it has been decided in an earlier stage of the same litigation."); *see also Hamilton v. Leavy*, No. 94-cv-336, 2004 WL 609334, at *1 (D. Del. Mar. 24, 2004) (after conducting additional discovery following remand by the Third Circuit, the court applied the law of the case doctrine because the evidence did not materially deviate from the evidence in the record).

In addition, the SPA itself precludes Defendants from arguing that the parties' agreement includes terms not expressed in that contract. *See, e.g.*, SPA at §§ 12.13, 12.15. SPA § 12.13 provides that the SPA, together with the Other Transaction Documents, constitute an integrated agreement. Such clauses are generally enforceable and serve to preclude evidence and argument "to vary or contradict the terms of the writing." *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337 (S.D.N.Y. 2005); *see also DDCLAB Ltd. v. E.I. DuPont De Nemours and Co.*, No. 03-cv-3654, 2005 WL 425495, at *4 (S.D.N.Y. Feb.18, 2005); *In re AbitibiBowater Inc.*, 418 B.R. 815, 826 (Bankr. D. Del. 2009).

Hon. Christopher S. Sontchi
August 24, 2020
Page 3

Section 12.15 of the SPA provides that any amendment, modification or alteration of the terms of the SPA is only effective if it is contained in a writing signed by the parties and 23 Capital. Such provisions are generally enforceable under New York law, which all parties agree governs interpretation of the SPA and the Other Transaction Documents. Under New York statute, where a contract contains a no oral modification clause, that clause will generally be enforced, with exceptions not applicable here. *See* N.Y. Gen. Obl. Law § 15-301(a) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."); *see also Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 121 (2d Cir. 1998*)*. No such writing exists in this case.

The purpose of a motion in limine is to bar "irrelevant, inadmissible, and prejudicial issues from being introduced at trial, thus narrow[ing] the evidentiary issues for trial[.]" *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (internal quotation marks omitted) (quoting *Laufen Intl, Inc. v. Larry J. Lint Floor & Wall Covering, Co.*, No. 10-199, 2012 WL 1458209, at *1 (W.D. Pa. Apr. 27, 2012)); *see also Robinson v. Beckles*, No. CV 10-362-SRF, 2019 WL 2453776, at *1 (D. Del. June 12, 2019). "The purpose of a limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Johns Hopkins Univ. v. Alcon Labs. Inc.*, No. CV 15-525, 2018 WL 4178159, at *1 (D. Del. Aug. 30, 2018). Motions in limine are useful tools "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).

Evidence, testimony and argument that the terms of the parties' agreement are other than as set forth in the four corners of the SPA and Other Transaction Documents are irrelevant, inadmissible and prejudicial and should be excluded from the trial of this matter. *R/S Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 33 (2002) ("Thus, when interpreting an unambiguous contract term [e]vidence outside the four corners of the document . . . is generally inadmissible to add to or vary the writing.")

The Trustee respectfully requests that his motion in limine to exclude evidence, testimony and argument that the terms of the parties' agreement differ in any way from those included in the SPA and Other Transaction Documents be granted in its entirety.

Respectfully,

/s/ Patrick E. Fitzmaurice
Patrick E. Fitzmaurice

cc: All counsel by ECF

PERKINSCOIE

1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711

+1.212.262.6900
+1.212.977.1649
PerkinsCoie.com

September 9, 2020

Keith W. Miller
KeithMiller@perkinscoie.com
D.  +1.212.262.6906
F.   +1.212.977.1641

**VIA ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Court, District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

**Re:**   *Carickhoff v. Goodwin*, Adv. Proc. No. 1:19-50095 (CSS) (Del. Bankr.)

Dear Chief Judge Sontchi:

Through motions *in limine*, the Trustee seeks to exclude undisputed evidence of fraud in the execution of the Goodwins' purported employment agreements with the Debtors while requesting that this Court enforce the product of that fraud.  The Trustee further seeks to preclude evidence that the Debtors' principals, by their actions and statements, modified the parties' agreements and ratified the Goodwins' consistent contractual performance.  This Court should reject the Trustee's improper and unfounded attempt to conceal evidence central to the ownership dispute at issue.

> **A.  This Court Should Not Exclude Evidence That the Goodwins Consistently Objected to, and then Struck, an Assignment Provision from Their Purported Employment Agreements That the Trustee Now Seeks to Enforce.**

In the guise of precluding evidence outside the "four corners of the SPA,"[1] the Trustee asks that this Court exclude evidence that the terms of the parties' agreement differ from "the *other documents* . . . entered by the parties in February 2016."  Trustee's MIL #1 at 1 (emphasis added); *see also* Trustee's MIL #2 at 1.  To the extent such "other documents" encompass the Goodwins' purported employment agreements with the Debtors (the "Purported Employment Agreements"), this Court should deny the Trustee's request to exclude from trial evidence that the Goodwins never assented – and, indeed, specifically objected – to an assignment provision in the Purported Employment Agreements.

As an initial matter, the Trustee incorrectly contends that this Court's decision denying the Trustee's motion for summary judgment on his claim for declaratory relief and granting summary judgment as to certain of the Goodwins' counterclaims (the "Decision") forecloses "the idea that the parties' agreement included terms different those contained in the  .  .  . Other Transaction

---

[1] Reserving all appellate rights, the Goodwins do not dispute that this Court's decision on the Trustee's motion for summary judgment precludes evidence that the SPA was void *ab initio* as the product of fraud or lack of a meeting of minds.

Hon. Christopher S. Sontchi
September 9, 2020
Page 2

Documents." Trustee's MIL #1 at 1. In fact, the Decision specifically distinguishes between the SPA and the Purported Employment Agreements, which, this Court noted, the Goodwins reviewed and objected to "on at least three occasions prior to closing." D.I. 132 at 22. The Decision further clarifies that "[w]hat is at issue on summary judgment is not the validity of the Employment Agreements but rather the validity of the SPA." *Id.* at 23 ("[E]ven if these employment agreements were part of the larger transaction, they, nevertheless, were different contracts from the SPA."). Far from "law of the case" as the Trustee maintains, the Decision simply does not extend to the Purported Employment Agreements, let alone whitewash fraud or a lack of meeting of the minds as to material terms therein.[2]

The Trustee's attempt to conceal undisputed evidence of the Goodwins' consistent objection to—and striking of—an assignment provision from the Purported Employment Agreements is particularly improper because the Trustee relies on that supposed assignment in asserting the Estates' ownership of interests the Goodwins maintained in "any contract with the players they represent, and any payment owed under such contract." G-00009365-67; G-00009390-92; *see* D.I. 87 at 6. Moreover, the Trustee asks that this Court determine, as a matter of law, whether "the closing of the purchase and sale transaction described in the SPA occur[red], or should [] be deemed to have occurred." Joint Pre-Trial Mem., Legal Issue #2. However, to the extent that the Debtors failed to ensure that the actual agreed-upon "Employment Agreements for A. Goodwin and E. Goodwin . . . have been duly executed by the parties thereto and delivered to Sellers" "on or prior to Closing," the Closing cannot be deemed to have occurred and the SPA may not be enforced against the Goodwins pursuant to its terms. TRUSTEE 010641-778, at TRUSTEE 010669 (SPA § 8.3(c)).

Simply put, the Trustee may not seek to preclude evidence casting doubt on the validity of the Purported Employment Agreements while relying on the validity of those purported agreements to prove his case-in-chief.

---

[2] A party may not invoke the doctrine of "law of the case" unless the disputed issue was actually decided at an earlier stage of the litigation. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 398 (3d Cir. 2003) (refusing to apply the doctrine of law of the case where it was unclear as to whether a prior Third Circuit panel "actually decided" an issue); *Wiest v. Lynch*, 15 F. Supp. 3d 543, 552 (E.D. Pa. 2014) ("law of the case" does not apply, even if a court issued a prior decision in a case, if that decision did not address the particular issue in dispute, or if the decision addressed sub-issues but not the ultimate issue) (citing *Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir. 1984)).

Hon. Christopher S. Sontchi
September 9, 2020
Page 3

> **B. This Court Should Not Exclude Evidence of the Parties' Modification of Their Agreements and the Debtors' Principals' Ratification of the Goodwins' Contractual Performance.**

To the extent the Trustee's motions *in limine* seek to preclude evidence that the Goodwins and the Debtors' principals modified the written agreements at issue and/or that the Debtors' principals ratified the Goodwins' contractual performance, the motion should likewise be denied.

The Trustee cites to the SPA's no-modification clause, Trustee's MIL at 2-3, while ignoring well-established New York law that parties may modify a written contract via subsequent oral agreement. *See Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279, 1283 (N.Y. 1977). Here, as in *Rose*, the Goodwins will demonstrate, through testimony and documentary evidence, that the parties' post-closing conduct amounted to an "indisputable mutual departure" from the payment mechanics that the Trustee contends were agreed to in the SPA and/or "Other Transaction Documents." *Id.*

Evidence of ratification is plainly relevant to the Goodwins' fourth counterclaim for a declaration of unenforceability. *See* Decision at 31 (identifying "ratification" as one of the "sole issues reserved for trial" on the Goodwins' counterclaim for unenforceability). Moreover, evidence of the Debtors' modification of written contract terms and ratification of the Goodwins' contractual performance relates directly to equitable defenses asserted by the Goodwins, including, without limitation, the defenses of promissory and equitable estoppel; unclean hands; laches; ratification; and waiver. D.I. 7.

Because the Decision denied the Trustee's motion for summary judgment as to his claim for declaratory relief, the Goodwins' equitable defenses to that claim are subject to trial. Evidence in support of those defenses – including evidence of the parties' agreed-upon departure from what the Trustee characterizes as the applicable contract terms – should not be concealed from the Court.

Accordingly, for the reasons discussed herein, the Goodwins respectfully request that the Court deny the Trustee's motions *in limine* to the extent they would exclude (a) evidence that the Purported Employment Agreements resulted from fraud or a lack of meeting of the minds and (b) evidence of the parties' modification of contract terms or ratification of the Goodwins' contractual performance.

Respectfully,

/s/ *Keith W. Miller*
Keith W. Miller