## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Decade, S.A.C., LLC, et al.,[1] | Case No. 18-11668 (CSS) (Jointly Administered) |
| Debtors. | |
| DAVID W. CARICKHOFF, solely in his capacity as chapter 7 trustee for the estates of DECADE, S.A.C., et al., | Adv Proc. No. 19-50095 (CSS) |
| Plaintiff, | |
| v. | |
| AARON GOODWIN, REGINA GOODWIN AND ERIC GOODWIN, | |
| Defendants. | |

## THE TRUSTEE'S RESPONSE TO THE COURT'S JANUARY 4, 2022
## ORDER ON RULE TO SHOW CAUSE

David W. Carickhoff, chapter 7 trustee (the "Trustee") of the Debtors, by and through his

undersigned special counsel Ashby & Geddes, P.A. and Pillsbury Winthrop Shaw Pittman LLP

(together, "Special Counsel"), hereby submits his memorandum of law in response to the Court's

*sua sponte* January 4, 2022 Order on Rule to Show Cause, Adv. D.I. 272 ("OSC"),[2] in advance of

---

[1] The debtors (the "Debtors") and the last four digits of each Debtors' respective federal Employer Identification Number are: Decade, S.A.C., LLC (8395); Gotham S&E Holdings, LLC (5927); Decade S.A.C. Contracts, LLC (7243); Decade S.A.C. II, LLC (5679); and Decade S.A.C. Executives, LLC (9865).

[2] References to the docket in this adversary proceeding are cited herein as "Adv. D.I.__" whereas references to the docket in the Main Bankruptcy Proceeding, Case No. 18-11668-CSS, are cited herein as "D.I.__," unless indicated otherwise.

1

the Rule to Show Cause hearing currently scheduled for February 14, 2022.  The Trustee respectfully states as follows:

## INTRODUCTION

For the past three years, Special Counsel has investigated and prosecuted claims and zealously advocated on behalf of the Trustee at no cost to the Debtors or the Estates. When Special Counsel's employment was pre-approved, the Court specifically noted that, pursuant to Bankruptcy Code sections 327(a) and 328, "Special Counsel's employment is necessary and in the best interests of the Debtors and their Estates." D.I. 81 at 2 ("Retention Order").  The status quo has not changed. Special Counsel's employment is still necessary to the further prosecution of the Claims[3], including, in this adversary proceeding, for purposes of the upcoming damages trial and any appeals.

Pursuant to the terms of Special Counsel's employment, as pre-approved by the Court, the Debtors and Estates will continue to benefit from Special Counsel's professional services *free of charge* unless and until Special Counsel obtains a recovery for the Estates that exceeds $10 million.

---

[3] "Claims" is defined in the Stipulation (as defined below) as "claims under the Bankruptcy Code and applicable state law on behalf of the Debtors' Estates . . . [which] shall include (but not be limited to):

> (a) All claims related to the recovery of assets owned by, or due to be paid to, any of the Debtors;
> (b) All claims related to the Debtors' ownership of GAME, GSM, SMP, and Encore;
> (c) All claims (including, but not limited to, claims based upon Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy laws) against the Goodwins;
> (d) All claims (including, but not limited to, claims based upon Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy laws) against Aden and James; and
> (e) All claims (including, but not limited to, claims based upon Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy laws) against any professional athletes."

*See* D.I. 76 ¶¶ 3-5.

4860-5224-7561

As set forth more fully below, the Trustee and 23 Capital have recently agreed that 23 Capital will not seek reimbursement of fees and expenses incurred by Special Counsel unless recoveries for the Estates exceed $20 million. Even then, the quantum of Special Counsel's compensation will require Court approval.  Any inquiry by the Court into Special Counsel's compensation under 11 U.S.C. § 328(a), thus, should be determined at a later date, namely, after Special Counsel's employment has concluded.

In any event, the Trustee respectfully submits that Section 328(a) does not grant the Court the authority to review Special Counsel's employment at this time, particularly given the fact that the Trustee, on behalf of the Estates, requires Special Counsel's continued retention to, at the very least, represent the Estates in connection with the upcoming damages trial.  Special Counsel has been prosecuting this adversary proceeding on behalf of the Trustee for three years.  To modify or rescind Special Counsel's retention and, potentially, require the Trustee to obtain replacement counsel, on the eve of trial would be unduly prejudicial to the Estates. [4]

In light of the Court's recent rulings in the adversary proceeding, the Trustee is once again attempting to reach a global resolution with 23 Capital, the Goodwins, and potentially other parties. However, if those attempts are unsuccessful, the continued retention of Special Counsel is necessary to protect and further the Estates' interests in connection with the upcoming damages trial and otherwise.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2017, XXIII Capital Limited ("23 Capital") commenced a litigation, styled *XXIII Capital Limited v. Decade S.A.C., LLC, et al.*, No. 1:17-cv-06910-GHW (the "SDNY

---

[4] The Trustee notes that the Estates lack funds to pay the fees and expenses of any replacement counsel.

Action") in the United States District Court for the Southern District of New York against the Debtors and others, including Aaron and Eric Goodwin. SDNY Action D.I. 1.

On December 22, 2017, the Goodwins filed their *Amended Answer with Counterclaims and Crossclaims* in the SDNY Action, asserting, among other things, claims against Decade for fraud, fraud in the execution, fraudulent inducement, breach of contract (alternative cause of action), and unjust enrichment (alternative cause of action). SDNY Action D.I. 127.

On July 16, 2018, Decade, S.A.C., LLC and Gotham S&E Holdings, LLC filed voluntary bankruptcy petitions with this Court. D.I. 1. On October 16, 2018, Decade S.A.C. Contracts, LLC, Decade S.A.C. II, LLC, and Decade S.A.C. Executives, LLC filed voluntary bankruptcy petitions with this Court. *See In re Decade, S.A.C. Contracts, LLC*, Case No. 18-12348-CSS, D.I. 1. On October 18, 2018, the Court entered an Order jointly administering these chapter 7 cases. D.I. 65.

On August 23, 2018, Aaron and Eric Goodwin (together, the "Goodwins") commenced an adversary proceeding in this Court ("Goodwin Action") against the Trustee, Christopher Aden, Dorsey James, and 23 Capital, seeking an *Injunction Under Section 105 of the Bankruptcy Code to Extend the Automatic Stay* to the Goodwins' businesses, Goodwin Associates Management Enterprises, Inc. and Goodwin Sports Management, Inc. *See Goodwin v. David W. Carickhoff*, Case No. 18-50713-CSS, D.I. 1. In their complaint, the Goodwins alleged, *inter alia*, that "the purported transfer of the Goodwin Entities was never actually completed and what was alleged to have been accomplished was done through fraud, making the purported transfer void *ab initio*." *Id*. ¶ 3. On October 11, 2018, the Goodwins filed a *Notice of Dismissal of Adversary Proceeding Without Prejudice and Without Costs* in the Goodwin Action, *id.,* D.I. 7.

On October 15, 2018, the Trustee filed a motion seeking to approve the *Stipulation By and Between 23 Capital Limited (f/k/a XXIII Capital Limited) and David W. Carickhoff, in His*

*Capacity as Chapter 7 Trustee for the Estates of Decade S.A.C., LLC and Gotham S&E Holdings, LLC* (the "Stipulation").  D.I. 61 ¶ 15.  The Stipulation provides, in relevant part, that:

- The Trustee will retain Special Counsel to investigate and prosecute certain contingent litigation claims (the "Claims" as defined in the Stipulation);

- 23 Capital will make a [$75,000] advance payment[5] to the Trustee on behalf of the Debtors' estates for allocation in the Trustee's discretion;

- 23 Capital will be primarily responsible for all fees and costs incurred by Special Counsel and any other professionals retained in connection with the investigation and prosecution of the Claims (the "Professionals");

- The Trustee will waive and release any claims against 23 Capital, confirm that 23 Capital has valid and duly perfected, first priority liens and security interests in certain collateral, including proceeds of the Claims, and agree to a $25 million allowed secured claim by 23 Capital in each of the Debtors' chapter 7 cases;

- The Trustee shall confer with 23 Capital concerning all aspects of the Claims and *the Professionals shall take their direction from the Trustee*.[6] 23 Capital and the Trustee agree that the Trustee will not incur fees for the Professionals in excess of an amount that has been agreed upon by the Parties but remains confidential without the prior written consent of 23 Capital;

- Any recoveries on the Claims will be shared between the Trustee and 23 Capital in accordance with the "Recovery Sharing" calculation in the Stipulation, which provides that:

  o Of the first $5 million recovered on account of the Claims, 23 Capital will receive 90% and the Debtors' estates will receive 10% (on a gross basis);

  o Of the next $5 million recovered on account of the Claims, 23 Capital will receive 94% and the Debtors' estates shall receive 6% (on a gross basis);

  o Of the next $15 million recovered on account of the Claims, 23 Capital will receive 94% and the Debtors' estates shall receive 6% (on a net basis of the

---

[5] This payment was timely made. *See* Declaration of David W. Carickhoff, dated January 18, 2022 ("Carickhoff Decl."), attached hereto, at ¶4.

[6] In addition, paragraph 7 of the Retention Order provides that "[i]n the event that 23 Capital seeks to take a position adverse to the Trustee or the Estates in these chapter 7 cases, 23 Capital shall retain alternative conflicts counsel and shall not use special counsel for such purposes, unless the Trustee subsequently affirmatively agrees otherwise in writing."

fees, costs and expenses incurred by 23 Capital in connection with the Claims); and

o   Amounts recovered in excess of $25 million will be paid: first, to 23 Capital to reimburse it for fees, costs and expenses incurred in connection with the Claims; second, to 23 Capital until it has received full payment on its allowed claim; and third, to the Trustee, on behalf of the Estates, for allocation in the Trustee's direction.

Consistent with the terms of the Stipulation, on October 15, 2018, the Trustee filed an application (the "Employment Application") for an order authorizing the retention and employment of Special Counsel to the Trustee for the "limited purpose of investigating, prosecuting, and settling the Claims…." D.I. 62 ¶ 16.

On November 5, 2018, the Court approved the Stipulation.  D.I. 76.

On November 13, 2018, the Court approved the Employment Application and, pursuant to Bankruptcy Code sections 327(a) and 328, authorized the Trustee to employ and retain Special Counsel for the limited purpose set forth in the Employment Application.  *See* Retention Order. In approving the employment of Special Counsel in this capacity, the Court held that "Special Counsel's employment is necessary and in the best interests of the Debtors and their Estates." *Id.* at 2.   In the Retention Order, the Court ordered that "[n]otwithstanding the foregoing or anything to the contrary in the [Employment] Application or Stipulation, no fees or expenses of the Special Counsel will be paid by the Estates, either directly or through application of recoveries from the Claims, absent Court approval of Special Counsels' Fee Applications (as defined herein) either on an interim or final basis." *Id.* ¶ 4. The Retention Order also provided that "Special Counsel shall file fee applications (the 'Fee Applications') after the Claims are resolved" and "[a]ll objections to the fees and/or expenses of Special Counsel, if any, are reserved and will not be filed with the Court until such time as Special Counsel files the Fee Applications." *Id.* ¶¶ 4-5.

On November 16, 2018, the Goodwins appealed the Court's approval of the Stipulation and the Retention Order to the United States District Court for the District of Delaware, Case No. 18-1880-MN (the "Appeal"). *See* Adv. D.I. 82.

On January 23, 2019, the Trustee, by and through Special Counsel, filed his *Complaint for Declaratory Judgment Determining Property of the Debtors' Estates* against Aaron, Eric, and Regina Goodwin. D.I. 107; Adv. D.I. 1.

On February 25, 2019, the Goodwins filed their *Answer with Counterclaims and Affirmative Defenses to Trustee's Complaint for Declaratory Judgment*, asserting four counterclaims: Declaration of Fraud in the Execution; Declaration of Fraudulent Misrepresentation; Declaration of Fraudulent Inducement; Declaration of Unenforceability. Adv. D.I. 7.

On August 23, 2019, the Trustee filed the *Trustee's Motion for Summary Judgment*, seeking summary judgment on count one of his Complaint and seeking dismissal of each of the Goodwins' four counterclaims. Adv. D.I. 86. The Court heard oral argument on January 6, 2020.

On January 29, 2020, the Court entered an Opinion granting the Trustee "summary judgment on three of the Goodwins' counterclaims; specifically, for fraud in the execution, fraudulent misrepresentation, and fraudulent inducement as the Defendants cannot establish the requisite elements of these claims" ("Summary Judgment Opinion"). Adv. D.I. 132-133 at 2.

On February 5, 2020, in the Appeal, U.S. District Court Judge Maryellen Noreika affirmed the Court's approval of the Stipulation and the Retention Order. Adv. D.I. 211. Specifically, Judge Noreika held that, with respect to the Court's approval of the Stipulation, "[t]he Bankruptcy Court properly considered the benefits to the estates from the settlement, weighed them against the risk of not settling, and determined that the Trustee's business judgment in determining that the benefits

outweighed the risks was sound." Adv. D.I. 211-1 at 9. With respect to the Retention Order, Judge Noreika held that "[t]he Bankruptcy Court did not abuse its discretion in approving the Trustee's retention of Special Counsel," as Special Counsel did not hold, nor did it represent, an interest adverse to the Estates. *Id.* at 20-21.

On October 12, 2021, the Court conducted its first day of trial in the adversary proceeding on liability.

On October 13, 2021, the Court entered an Order vacating the Summary Judgment Opinion and denying the Trustee's Motion for Summary Judgment, and further ordered that the trial proceed immediately on the merits of the complaint and all counterclaims. Adv. D.I. 232.

On October 13-15, 26, and 28 and November 16, 2021, the Court further conducted the trial on liability.

On December 27, 2021, the Court entered its *Findings of Fact and Conclusions of Law,* in which the Court found in favor of the Goodwins on their previously dismissed counterclaims for fraud in the execution, fraudulent misrepresentation, and fraudulent inducement, and against the Trustee on his claim for declaratory judgment. Adv. D.I. 271.

On January 4, 2022, the Court *sua sponte* entered the OSC, setting a Rule to Show Cause hearing for February 14, 2022, "to show cause as to why the terms and conditions of the employment of Special Counsel as set forth in the Stipulation should not be rescinded or modified in accordance with 11 U.S.C. § 328(a)." OSC at 5.

## ARGUMENT

I.    **The Court Lacks Authority Pursuant to Section 328(a) to Rescind the Trustee's Employment of Special Counsel**

Section 328(a) provides:

8

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow *compensation different* from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. (emphasis added).

By its plain language, Section 328(a) only permits a court to revisit and modify a professional's *fee* arrangement -- not to alter or terminate the professional's *employment*. Indeed, Section 328 of the Bankruptcy Code is titled "Limitation on compensation of professional persons" and does not authorize the termination or discharge of professional persons employed by a trustee whose retention has been pre-approved by the Court. *See generally* 11 U.S.C. § 328; *see also* 11 U.S.C. § 328(c) (providing the limited ways in which the court may deny allowance of compensation and reimbursement of expenses of a professional person). This is particularly true where, as here, the Trustee, on behalf of the Estates believes it is necessary to continue with Special Counsel's retention on the terms that have been agreed between the Trustee and 23 Capital, as modified. Termination or discharge of Special Counsel now would unduly prejudice the Estates, given the advanced stage of this litigation and the imminent deadlines associated therewith.

The Trustee is aware of no legal authority providing otherwise.

## II.    Neither Modification nor Rescission of the Terms of Special Counsel's Employment is Available Under Section 328(a) Because Special Counsel's Employment Has Not Concluded

Under the plain language of Section 328(a), a court may alter the compensation that a professional would otherwise receive only "after the conclusion of such employment." 11 U.S.C. § 328(a). "Because [Special Counsel] has not concluded its employment as special counsel to the debtor, section 328(a) does not permit the court to change the terms and conditions of a

9

professional person's employment. . . . The statute, by its own terms, requires this result." *In re Yablon,* 136 B.R. 88, 91–92 (Bankr. S.D.N.Y. 1992) (holding that court lacked authority to change terms and conditions of special counsel's employment where counsel's pursuit of RICO claim was ongoing).

Although the liability trial in this adversary proceeding has finished, the Trustee's employment of Special Counsel is far from concluded. The Trustee's employment of Special Counsel is still necessary for purposes of representing the Trustee in the upcoming damages trial as well as any appeals in this adversary proceeding, in addition to potentially pursuing other claims that may be brought on the Estates' behalf. The Trustee still supports the employment of Special Counsel and believes its employment is necessary for any recovery by the Estates. *See* Carickhoff Decl. ¶ 6.

As Special Counsel's employment is ongoing, Special Counsel's employment and fee arrangement under the Stipulation and Employment Application may not be modified or rescinded pursuant to Section 328(a).

### III.    Even if Section 328(a) Permitted the Court to Modify Special Counsel's Employment Now, There Are Insufficient Grounds for Disturbing the Court's Pre-Approval of Special Counsel's Employment

Courts uniformly hold that "[w]here the court pre-approves the terms and conditions of the retention under section 328(a), its power to amend those terms is severely constrained." *In re Smart World Techs., LLC*, 552 F.3d 228, 232 (2d Cir. 2009); *accord In re Fundamental Long Term Care, Inc.*, 626 B.R. 51, 58 (Bankr. M.D. Fla. 2021); *In re ASARCO, L.L.C.,* 702 F.3d 250, 258 (5th Cir. 2012) ("Section 328(a)'s establishment of such a 'high hurdle' was no accident. Congress enacted § 328(a) to eliminate the previous uncertainty associated with professional compensation in

bankruptcy proceedings, even at the risk of potentially underpaying, or, conversely, providing a windfall to, professionals retained by the estate under § 328(a).").

Specifically, "[u]nder § 328(a), only 'developments not capable of being anticipated at the time of the fixing of the terms and conditions' of engagement may render a previously approved term improvident." *In re Nw. Corp.,* 344 B.R. 40, 43 (D. Del. 2006) (quoting 11 U.S.C. § 328(a)); *accord In re Fed. Mogul–Glob. Inc.,* 348 F.3d 390, 397 (3d Cir. 2003); *In re Smart World Techs*., 552 F.3d at 234. "[I]t is not enough that circumstances allegedly making fee arrangement improvident were not, in fact, foreseen by the court or parties when terms of employment were pre-approved; rather, developments making fee arrangement improvident must have been *incapable of anticipation* at time compensation was fixed." *In re Smart World Techs.,* 552 F.3d 228 (emphasis added); *accord In re Argose Inc.*, 372 B.R. 705, 710 (Bankr. D. Del. 2007) (holding that stipulation was not improvident because the trustee and general counsel "*could have* anticipated that the assets would not be sold for much at the time the Stipulation was executed.") (emphasis added); *In re Fundamental Long Term Care*, 626 B.R. at 58 ("[A] contingency fee agreement is not improvident even if the fees appear excessive in hindsight at the end of the case, or even if an unexpected event such as a settlement or sale affects the rate claimed by the professional, as long as the event was *capable* of anticipation at the time the fee agreement was pre-approved.").

Indeed, courts consistently hold that the Section 328(a) improvidence standard is "a difficult requirement to meet, and courts rarely alter a fee award on these grounds." *In re XO Commc'ns, Inc.,* 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005), *aff'd sub nom. Howard v. High River Ltd. P'ship,* 369 B.R. 111, 117 n.8 (S.D.N.Y. 2007); *see, e.g., In re Yablon,* 136 B.R. at 92 (holding that "the requirement of 'improvidence in light of developments not capable of being

anticipated at the time' makes it difficult, as a practical matter, for a court to vary the compensation even when it thinks that it was improvident at the outset") (citations omitted); *In re Black Diamond Mining Co., LLC,* No. 08-70066, *et al.*, 2009 WL 4907030, at *3 (Bankr. E.D. Ky. Dec. 11, 2009) ("The § 328 standard is a demanding one.").

Here, for at least four reasons, there can be no doubt that the Trustee's employment of Special Counsel falls short of the demanding improvidence standard.

1.    There Were No Developments in This Case That Were Incapable of Being Anticipated When Special Counsel's Employment and Fee Arrangement Were Pre-Approved by the Court

The Trustee is not aware of any developments in this case that were incapable of being anticipated by the Court and/or Trustee when the Stipulation was entered. *See* Carickhoff Decl. ¶ 6. Since the Court approved the Stipulation and Employment Application in November 2018, the Trustee and Special Counsel have had open lines of communication regarding legal strategy and the merits of this adversary proceeding, and Special Counsel has taken its directions from the Trustee consistent with the terms of the Stipulation.

To the Trustee's knowledge, the only events in this case identified by the Court as potential "developments" relevant to an analysis under Section 328(a) pertain to the Court's factual findings in the Court's Findings of Fact and Conclusions of Law, Adv. D.I. 271, entered by the Court on December 27, 2021, that resulted in the Court finding against the Trustee and in favor of the Goodwins on their counterclaims. OSC at 4. Specifically, in its OSC, the Court identifies certain of these factual findings that were decided against the Trustee, namely, that "the Goodwins were defrauded by entering into a transaction which contained terms they specifically opposed, and others which were intentionally concealed." *Id.* at 5.

4860-5224-7561

However, the Goodwins' allegations of fraud were raised in their Amended Answer with Counterclaims and Crossclaims in the SDNY Action, and in the Goodwins' Complaint filed with this Court in the Goodwin Action – *before* the Court approved the Stipulation and Employment Application.  Accordingly, the Court and the Trustee were fully capable of anticipating that these arguments would be raised and that the Court could enter findings of fact on these issues that went against the Trustee following a trial on liability.  The Court's and the Trustee's hindsight on the viability of the Goodwins' fraud allegations is irrelevant to a finding of improvidence under Section 328(a), because "[t]he improvident test under section 328 is foresight-driven, not hindsight-determinative." *See In re Argose,* 372 B.R. at 710, *on reconsideration,* 377 B.R. 148 (Bankr. D. Del. 2007).

An adverse ruling on factual issues determined by a factfinder at trial does not amount to a "development not capable of being anticipated" at the time the Stipulation and Employment Application were approved.  If the opposite were true, courts would routinely deny compensation to professional persons employed by trustees who lost at trial on fact issues, which would dissuade professionals from offering their services to debtors. *See In re ASARCO,* 702 F.3d at 258 (citation and emphasis omitted).  This would directly undercut Congress' primary purpose for passing Section 328(a) in the first instance: encouraging professional persons to offer their services to debtors by "allow[ing] professionals to have greater certainty as to their eventual payment." *Id.* at 258 (quoting *In re Barron,* 325 F.3d 690, 695 (5th Cir. 2003) (Jones, C.J., concurring)).

Moreover, although the improvident standard focuses on the Trustee's objective ability to anticipate developments *as of the date the Stipulation and Employment Application were approved* in November 2018 – and putting to the side the SDNY Action and Goodwin Action – it is worth noting that the Court and Trustee have both long been aware that allegations of fraud would be

13

asserted by the Goodwins at the liability trial.  For example, in the instant adversary proceeding, the Goodwins asserted counterclaims and defenses sounding in fraud at the pleading stage in early 2019. *See Defendants' Answer with Counterclaims and Affirmative Defenses*, Adv. D.I. 7.  And, the Goodwins raised these exact allegations of fraud at the summary judgment stage, including the specific allegation that Decade attached the Goodwins' signature pages to drafts of the Executive Employment Agreements to which the Goodwins did not agree. *See* Goodwins' Mem. of Law In Opp. to the Trustee's Mot. for Summ. J., at 13-14 (Adv. D.I. 101).

Notwithstanding the Goodwins' allegations of fraud, there was a good faith basis in the law to pursue the claims against them in this adversary proceeding.  Indeed, during oral argument on the Trustee's Motion for Summary Judgment, the Trustee stipulated, for limited purposes of the motion, that Decade's principals committed fraud. *See* Jan. 6, 2020 Hr'g Tr. at 4:22-5:1; 48:11-12.  Relying on the case law cited by the Trustee, the Court found in the Trustee's favor on summary judgment and dismissed the Goodwins' three counterclaims sounding in fraud (fraud in the execution, fraudulent misrepresentation, and fraudulent inducement) holding that the Goodwins were bound to the transaction, even if they were defrauded, because they failed to read the Share Purchase Agreement before signing it. *See* Summary Judgment Opinion at 21-23, 26, 30, 32.

In sum, the Goodwins had already asserted their allegations of fraud at the time the Court approved the Stipulation and Employment application such that a finding in favor of the Goodwins on those claims are not unanticipated developments under Section 328(a) – they could have been anticipated when the Stipulation and Employment Application were approved, and indeed were anticipated long before the liability trial during which those fact issues were decided.

4860-5224-7561

It is also relevant here that neither Special Counsel firm, nor Pillsbury's predecessor firm, Troutman Sanders, was involved in any way with the underlying transaction. The Court may take judicial notice of the docket in the SDNY Action that reflects that Troutman Sanders replaced prior counsel, Loeb & Loeb, LLP, in that case on May 1, 2018, eight months after it had been commenced.

2.    The Trustee's Employment of Special Counsel Cannot Be Deemed Improvident Because No Fees Have Been Incurred by the Estates

The entirety of Special Counsel's legal fees and expenses have been absorbed by 23 Capital, not by the Debtors or the Estates. *See* Carickhoff Decl. ¶ 7.  And, 23 Capital may only seek reimbursement of Special Counsel's legal fees once recoveries on the Claims exceed $20 million, an event in which Special Counsel's efforts necessarily would have provided substantial benefit of the Estates.  Even then, pursuant to the Retention Order, no legal fees can be paid to Special Counsel without Court approval.  The Retention Order also provides that Special Counsel shall file fee applications "after the Claims are resolved" and that "all objections to the fees and/or expenses of Special Counsel, if any, are reserved and will not be filed with the Court until such time as Special Counsel files the Fee Applications." Retention Order ¶¶ 5-6. Accordingly, any issues or concerns the Court may have regarding the quantum of Special Counsel's recovery of fees from the Estates – as weighed against the benefit Special Counsel provided to the Estates – can and should be adjudicated at a later date, namely, at the conclusion of Special Counsel's employment.

3.    The Economics of Special Counsel's Employment Have Been Modified to the Benefit of the Trustee

Following entry of the Court's OSC, the Trustee and 23 Capital have agreed to modifications to the Stipulation to the benefit of the Estates.  Specifically, the Trustee and 23

15

Capital have modified the Stipulation as follows: (a) they have agreed that 23 Capital will not seek reimbursement of costs and expenses, including legal fees, incurred by Special Counsel, unless recovery on the Claims exceeds $20 million; and (b) they have also agreed to increase the Trustee's authority to approve settlement of any Claim without requiring 23 Capital's written consent. *See* Carickhoff Decl. ¶ 8.   Given this recent development, the argument that Special Counsel's employment has been improvident should be afforded even less weight.

4.    The Trustee and the Estates Will Be Prejudiced by Rescission or Modification of Special Counsel's Employment

Last, although not necessary to an analysis under Section 328(a), it is worth noting that the Trustee and the Estates will be prejudiced by the termination of Special Counsel's employment at this time. This adversary proceeding has resulted in the production of tens of thousands of documents and thousands of attorneys' hours, the vast majority of which have been conducted by Special Counsel. Indeed, Special Counsel handled discovery (including depositions), was the primary draftsperson for motions and briefs, conducted research for such motions and briefs, and was lead trial counsel. If Special Counsel is removed from this action, the Trustee will be forced to obtain replacement counsel to try a damages and equitable subordination trial on a few weeks' notice and then prosecute an appeal from this matter's voluminous record, without compensation, substantially prejudicing the Estates.[7]

---

[7] While Archer & Greiner has served as the Trustee's generally bankruptcy counsel in the main bankruptcy cases, it has not entered an appearance in the adversary proceeding and has not been meaningfully involved in the prosecution thereof.  Archer & Greiner, or any other replacement firm would largely be starting "fresh" with an extraordinarily high learning curve.

4860-5224-7561

## CONCLUSION

For the reasons set forth above, the Trustee respectfully requests that any request for modification of rescission of Special Counsel's employment under the Stipulation and Employment Application be denied.


Dated:       January 18, 2022                    **ASHBY & GEDDES, P.A.**

By: */s/ Ricardo Palacio*
Ricardo Palacio (#3765)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899-1150
Tel: 302.654.1888
Fax: 302.654.2067

-and-

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

Patrick E. Fitzmaurice
Brian L. Beckerman
Stephanie M. Coughlan
31 West 52nd Street
New York, New York 10019
Tel: 212.858.1000
Fax: 212.858.1500

*Special Counsel to David W. Carickhoff as
Chapter 7 Trustee*

17

4860-5224-7561